36 DEFOREST AVENUE, LLC *v.*
LEONARD CREADORE
(AC 26573)

Bishop, McLachlan and Rogers, Js.

Argued November 14, 2006—officially released February 27, 2007

*Paul A. Sobel*, for the appellant (plaintiff).

*Philip M. French*, for the appellee (defendant).

*Opinion*

ROGERS, J. The plaintiff, 36 DeForest Avenue, LLC, appeals from the judgment of the trial court denying its application to discharge or reduce a mechanic's lien placed on its property by the defendant, Leonard Creadore. The plaintiff claims on appeal that the court improperly concluded that there was probable cause to sustain the validity of the lien because it was not (1) timely filed or (2) properly served on the prior owner of the property as required by General Statutes § 49-34.[1] The plaintiff claims further that Connecticut's

---

[1] General Statutes § 49-34 provides that "[a] mechanic's lien is not valid unless the person performing the services or furnishing the materials (1) within ninety days after he has ceased to do so, lodges with the town clerk of the town in which the building, lot or plot of land is situated a certificate in writing, which shall be recorded by the town clerk with deeds of land, (A) describing the premises, the amount claimed as a lien thereon, the name or names of the person against whom the lien is being filed and the date of the commencement of the performance of services or furnishing of materials, (B) stating that the amount claimed is justly due, as nearly as the same

mechanic's lien statutes are unconstitutional. We affirm the judgment of the trial court.[2]

The following facts, found by the court or not disputed, and procedural history are relevant to the appeal. The subject property, located at 36 DeForest Avenue in Bridgeport, is a commercial garage building. It previously was owned jointly by the late Steven Karantonis and his daughter. On October 2, 2004, Karantonis was diagnosed with terminal cancer and, on October 30, 2004, he died. In February, 2005, Karantonis' daughter sold the property to the plaintiff.

The defendant and Steven Karantonis had enjoyed a personal and professional relationship for many years. Before Karantonis fell ill, he and the defendant had undertaken a number of improvements to the property as part of an ongoing renovation project. Their plan was to construct a "build out" residential apartment within the building that Karantonis then would occupy.[3] The project was never completed because of Karantonis' death.[4] The business arrangement between the

can be ascertained, and (C) subscribed and sworn to by the claimant, and (2) not later than thirty days after lodging the certificate, serves a true and attested copy of the certificate upon the owner of the building, lot or plot of land in the same manner as is provided for the service of the notice in section 49-35."

[2] The plaintiff also has argued that the court improperly failed to award it damages pursuant to General Statutes § 49-51. That statute, under certain circumstances, authorizes a court to award damages to a party aggrieved by a lienor's improper maintenance of an invalid lien. Because the success of this claim is dependent on the plaintiff's prevailing on one of its first two claims, it necessarily fails.

[3] As explained by the defendant, "36 DeForest is a garage building, and what we did was built a second floor. Made offices, kitchen, bathroom, bedroom area on the second floor of the building. Or inside. We built the second floor inside the building. That wasn't—it wasn't there previously."

[4] The defendant introduced as an exhibit a drawing he had prepared about three years earlier, depicting the planned renovations. Referencing the drawing, he identified several items that were never completed due to Karantonis' demise. Specifically, he testified that a rear storage platform, a side platform and two stairways shown on the drawing were not completed. He later added that he still needed to install in the kitchen a dishwasher

men had been an informal one.[5] The defendant's mechanic's lien, which he filed on January 27, 2005, was intended to secure payment for a portion of this work. On April 1, 2005, the plaintiff filed an application to discharge or reduce the lien. A hearing on the application was held on May 2, 2005.

The defendant's lien was in the amount of $19,903.94 and related to services and materials he had provided between December 22, 2003, and November 1, 2004. In support of his claim, he submitted into evidence four invoices: an invoice dated December 22, 2003, in the amount of $1433.78, for the installation of an alarm system and wiring; an invoice dated April 15, 2004, in the amount of $9850, for the installation of an air conditioning system, furnace, water heater and duct work; an invoice dated May 3, 2004, in the amount of $8545.16, for kitchen cabinets, countertops, tile and plumbing; and an invoice dated November 1, 2004, in the amount of $75, for servicing of the water heater and heating system and winterizing of the building. The defendant indicated that the date on each invoice was the date on which he completed the work described in that invoice.

The court found that all of the work represented by the defendant's invoices was part of the same ongoing renovation project, begun at the request of Karantonis. It found credible the defendant's testimony that he possessed keys to the premises and considered that circumstance to evidence the contemplation of a long-term project. The court thus concluded that the defendant's

and a microwave oven, which apparently had just been delivered around the time Karantonis fell ill.

[5] The defendant testified that he and Karantonis were very close friends who often had worked together. He explained that the two regularly would do jobs for each other, accruing debts that eventually would be repaid either in kind or through actual cash payment. According to the defendant, he and Karantonis did work "on a handshake because we were close friends."

mechanic's lien, filed within ninety days of the final work performed on November 1, 2004, was timely. Accordingly, it denied the plaintiff's application to discharge the lien.[6] This appeal followed.[7] Additional facts and procedural history will be provided where necessary to address the claims raised.

I

The plaintiff argues first that, in regard to all of the work performed prior to November 1, 2004, the defendant's lien was untimely, and, therefore, there was no probable cause to sustain its validity. It contests the court's finding that the November 1, 2004 work was part of an ongoing project, claiming that that work bore no relation to the earlier, already finished components of the project. According to the plaintiff, because "the mechanic's lien was filed on January 27, 2005, and [because] all but $75 of the claimed $19,903.94 was for work completed by May 3, 2004, the . . . § 49-34 ninety day filing deadline meant that the defendant needed to show that the . . . work [represented by the December 22, 2003, and April 15 and May 3, 2004 invoices] was not really finished as of May, and that some other work in furtherance of [the earlier work] was performed within the ninety day period leading up to the January 27, 2005 lien filing." We disagree.

The standard of proof applicable in proceedings to discharge mechanic's liens is a modest one. For a lien to be upheld, a lienor must establish only that there is "probable cause to sustain the validity of the lien.[8] Proof of probable cause is not as demanding as proof by a fair preponderance of the evidence." *Newtown Associates* v. *Northeast Structures, Inc.*, 15 Conn. App. 633,

[6] The court granted the plaintiff's alternative request to substitute a bond with surety for the lien. See General Statutes § 49-37.

[7] Pursuant to General Statutes § 49-35c (a), an order denying an application to discharge a mechanic's lien is a final judgment for purposes of appeal.

[8] See General Statutes § 49-35b (a).

636–37, 546 A.2d 310 (1988). "It is important to remember that the [lienor] does not have to establish that he will prevail, only that there is probable cause to sustain the validity of the claim. . . . The legal idea of probable cause is a bona fide belief in the existence of the facts essential under the law for the action and such as would warrant a man of ordinary caution, prudence and judgment, under the circumstances, in entertaining it. . . . Probable cause is a flexible common sense standard. It does not demand that a belief be correct or more likely true than false." (Internal quotation marks omitted.) *Cadle Co.* v. *Gabel*, 69 Conn. App. 279, 286–87, 794 A.2d 1029 (2002). Thus, we must determine whether the trial court's determination that probable cause exists to sustain the defendant's claim was clearly erroneous. See id., 287.

In conducting our review, we also must remain cognizant of the remedial purpose of our mechanic's lien statutes, i.e., "to give one who furnishes materials or services the security of the building and land for the payment of his claim by making such claim a lien thereon"; (internal quotation marks omitted) *Rollar Construction & Demolition, Inc.* v. *Granite Rock Associates, LLC*, 94 Conn. App. 125, 129, 891 A.2d 133 (2006); and the oft-stated directive that those provisions "should be liberally construed in order to implement [that] remedial purpose . . . ." (Internal quotation marks omitted.) Id. Finally, we note that the court's ruling rested in large part on its evaluation of testimonial evidence. "It is axiomatic that we defer to the trial court's assessment of the credibility of witnesses and the weight to afford their testimony." (Internal quotation marks omitted.) *New Haven* v. *Tuchmann*, 93 Conn. App. 787, 798, 890 A.2d 664, cert. denied, 278 Conn. 903, 896 A.2d 104 (2006).

We conclude that the evidence presented, including the defendant's testimony, his possession of keys to

the premises and the drawing that depicted work yet to be done; see footnote 4; provided more than adequate support for the court's finding that the renovation project at the premises was ongoing at the time of Karantonis' death, and, therefore, that finding is not clearly erroneous. See *Ramondetta* v. *Amenta*, 97 Conn. App. 151, 164, 903 A.2d 232 (2006) ("finding of fact is clearly erroneous when there is *no evidence in the record* to support it" [emphasis added; internal quotation marks omitted]). Because the project was ongoing, the filing of the defendant's lien more than ninety days after the performance of services in December, 2003, through May, 2004, and the fact that the final services rendered in November, 2004, were of a different nature than those previously performed, do not compel the conclusion that the lien was untimely as to the earlier services. See *Peck* v. *Brush*, 90 Conn. 651, 98 A. 561 (1916) (when project not substantially complete at time plaintiff ceased furnishing building materials on November 5, 1912, lien filed within sixty days[9] of end date of plaintiff's provision of plumbing services between January and March, 1913, effectively secured payment for both materials and services).[10]

---

[9] Earlier versions of General Statutes § 49-34 provided for shorter filing periods.

[10] The plaintiff's characterization of the defendant's work for Karantonis as a series of wholly independent projects, rather than one long-term renovation project, does not find support in the record. Even if the evidence were so viewed, however, it is not clear that a lien filed within ninety days of the last such project would be untimely as to the earlier performed work on the same property. See *Parsons* v. *Keeney*, 98 Conn. 745, 749, 120 A. 505 (1923) ("Where there is a lienable claim arising from distinct contracts as to the same lienable unit of land and buildings, and where these contracts are carried out in a continuous and overlapping employment, the fair and reasonable intent of the statute is to permit the builder to file a certificate of lien for the entire claim arising under all the contracts, without reference to when the work under any particular contract was begun or ended. Under such circumstances the sixty days allowed for filing the certificate would begin when the last operation was performed under the continuous overlapping employment."); *Anthony Julian Railroad Construction Co.* v. *Mary Ellen Drive Associates*, 39 Conn. App. 544, 548, 664 A.2d 1177, cert. denied,

Although the plaintiff did not explicitly cite the case law in its brief, it appears that the plaintiff's argument relies on case law that applies when a contractor, who essentially has completed a project and has allowed the § 49-34 (1) filing period to expire, thereafter returns to the job site and performs some de minimis task in an effort to revive the viability of a lien as to all of his work. As explained by our Supreme Court, "the general rule is that the time period for filing a certificate of mechanic's lien commences on the last date on which services were performed or materials were furnished . . . ." (Citations omitted.) *F.B. Mattson Co. v. Tarte*, 247 Conn. 234, 239, 719 A.2d 1158 (1998). An exception arises, however, "when work has been substantially completed and the contractor unreasonably has delayed final completion . . . ." Id. In this circumstance, "the time period for filing a certificate of mechanic's lien will be computed from the date of substantial completion. . . . Moreover, when an unreasonable period of time has elapsed since substantial completion of the work, the performance of trivial services or the furnishing of trivial materials generally will not extend the time for filing the certificate past the date of substantial completion." (Citation omitted.) Id.

In the present case, the court found that all of the defendant's work was part of an ongoing project, i.e., that the project was *not* substantially complete. Because that finding is supported by evidence, it is not clearly erroneous. Accordingly, the exception described in *F.B. Mattson Co.* is not implicated.[11]

235 Conn. 930, 667 A.2d 800 (1995); see footnote 9. Although the defendant did not bill Karantonis for any work between May 3 and November 1, 2004, he testified that during that time, he "was always up there doing stuff with [Karantonis] on the weekends." We reiterate that the applicable burden of proof was not an onerous one.

[11] The court in its memorandum of decision observed further that "[n]o evidence presented at the hearing suggests that [the defendant] delayed completion of the project for an unreasonable period of time in order to extend the time within which a mechanic's lien could be filed." That observation is consistent with the record.

To the extent the plaintiff contends that the services rendered by the defendant on November 1, 2004, were not lienable work under General Statutes § 49-33 because they were in the nature of maintenance, that contention is rejected. See *Nickel Mine Brook Associates* v. *Joseph E. Sakal, P.C.*, 217 Conn. 361, 368, 585 A.2d 1210 (1991) (" 'mechanic' is normally envisioned as a skilled worker who brings about a result by the use of *tools*, machines or equipment" [emphasis added]). The defendant testified as to his use of tools.[12] Moreover, it cannot be said that the defendant's efforts to ensure that the recently installed heating system was operating properly so that the partially renovated building would not sustain damage from the impending winter was not "an essential part in the scheme of physical improvement." *Thompson & Peck, Inc.* v. *Division Drywall, Inc.*, 241 Conn. 370, 374, 696 A.2d 326 (1997).

We recognize that the facts of this case are unusual, insofar as they involve an informal, long-term project prematurely terminated due to the sudden demise of the property owner. It bears reemphasis, however, that the burden of proof at a probable cause hearing is a low one, and the court in evaluating the evidence must weigh both factual and legal probabilities. See *Doe* v. *Rapoport*, 80 Conn. App. 111, 117, 833 A.2d 926 (2003). The probable cause hearing is not a full-scale trial on the merits and the defendant did not have to establish that he ultimately will prevail, only that there is probable cause to sustain the validity of the claim. See id.,

---

[12] In describing his November 1, 2004 work, the defendant testified: "I shut down the water and the hot water heater in the building. Turned off the gas to that and winterized the building so there wouldn't be any damage because of the impending winter. . . .

"I had to . . . use wrenches to shut the gas down and drain the water out and shut down the water heater. I also checked the heating system to make sure the heat was going to be adequate for the winter. Reset the temperature on the thermostat. Oiled up the motor. Changed the filter in the furnace and made sure the heating was operating properly [be]cause it was a special heating system that I installed there."

116–17. We conclude that the defendant met his burden, and, accordingly, the court properly refused to discharge the lien on the basis of untimeliness.

II

The plaintiff claims next that the defendant's lien was invalid due to improper service. Specifically, it argues that § 49-34 (2) required the defendant to serve a copy of the certificate of lien on Karantonis' daughter, in addition to the plaintiff, because she was an owner of the property at the time the defendant's services were rendered and at the time the lien was filed with the town. We are not persuaded.

The following procedural history is pertinent. The defendant lodged his certificate of lien with the town clerk of Bridgeport on January 27, 2005. At this time, Karantonis was deceased and his daughter was the sole owner of the property. On February 16, 2005, Karantonis' daughter sold the property to the plaintiff. On February 23, 2005, the defendant served on the plaintiff a copy of the certificate of lien. On March 31, 2005, the plaintiff filed its application to discharge or reduce the lien. On May 6, 2005, the court denied the plaintiff's application, concluding, inter alia, that § 49-34 "contains no provision mandating service of process upon the prior owner" of liened property.

For a mechanic's lien to be valid, section § 49-34 (2) requires that a lienor, within thirty days of lodging a certificate of lien with the clerk of the town within which the liened property is located, serve "a true and attested copy of the certificate upon the owner of the building, lot or plot of land in the same manner as is provided for the service of the notice in section 49-35." General Statutes § 49-34 (2). General Statutes § 49-35 (a) describes the proper method of service and provides further, in relevant part, that "[w]hen there are two or more owners . . . the notice shall be so served on each

owner . . . ." The plaintiff's claim requires us to construe the meaning of the term "owner" as used in the aforementioned statutes. Accordingly, our review is de novo. *Stone-Krete Construction, Inc.* v. *Eder*, 280 Conn. 672, 676–77, 911 A.2d 300 (2006).

"When construing a statute, [o]ur fundamental objective is to ascertain and give effect to the apparent intent of the legislature. . . . In other words, we seek to determine, in a reasoned manner, the meaning of the statutory language as applied to the facts of [the] case, including the question of whether the language actually does apply. . . . In seeking to determine that meaning, General Statutes § 1-2z directs us first to consider the text of the statute itself and its relationship to other statutes. If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence of the meaning of the statute shall not be considered." (Internal quotation marks omitted.) *Stone-Krete Construction, Inc.* v. *Eder*, supra, 280 Conn. 677.

Our examination of the text of §§ 49-34 and 49-35 and related statutes convinces us that the plaintiff's claim is without merit. First, the plain language of §§ 49-34 and 49-35 requires service of a certificate of lien on the "owner" of liened property, not, e.g., the "prior owner," "previous owner" or "predecessor in interest." Ordinarily, we "decline to read into statutes provisions that are not clearly stated." *State* v. *Guckian*, 27 Conn. App. 225, 243, 605 A.2d 874 (1992), aff'd, 226 Conn. 191, 627 A.2d 407 (1993). We note that our Supreme Court has declined to extend the definition of "owner," as used in § 49-34, beyond its commonly understood meaning. See *Red Rooster Construction Co.* v. *River Associates, Inc.*, 224 Conn. 563, 569–70, 620 A.2d 118 (1993) (mortgagee not "owner" of property despite holding legal title thereto).

Second, as our Supreme Court has explained, both the notice provision of § 49-34 (2) and a related provision in General Statutes § 49-35a,[13] authorizing the owner of liened property to apply for a hearing to determine whether a lien should be discharged or reduced, were part of a sweeping legislative revision enacted in response to a decision of that court[14] holding our mechanic's liens statutes unconstitutional because, in short, they allowed for the taking of property without due process of law. See *Papa* v. *Greenwich Green, Inc.*, 177 Conn. 295, 300–302, 416 A.2d 1196 (1979). Considering these changes, which were "intended to protect the constitutional rights of owners," the court opined that *"when an individual's property right might be adversely affected and where he has a constitutional prerogative to a timely hearing,* such an individual should be provided with a fair and suitable notice of the recording of a mechanic's lien against that property." (Emphasis added.) Id., 302. It is clear from the foregoing that "owner," as used in §§ 49-34 and 49-35, means only the owner at the time of service of the certificate of lien because, at that time, it is only that owner who possesses adversely affected property rights and, consequently, has the right to a hearing designed to protect those rights. See *Santa Fuel, Inc.* v. *Varga*, 77 Conn. App. 474, 481, 823 A.2d 1249 ("statute should be construed, having in view the nature and reason of the remedy and the object of the statute, in order to

[13] General Statutes § 49-35a (a) provides in relevant part that "[w]henever one or more mechanics' liens are placed upon any real estate . . . the owner of the real estate . . . may make application, together with a proposed order and summons, to the superior court for the judicial district in which the lien may be foreclosed . . . that a hearing or hearings be held to determine whether the lien or liens should be discharged or reduced. . . ."

[14] See *Roundhouse Construction Corp.* v. *Telesco Masons Supplies Co.*, 168 Conn. 371, 376–78, 382–84, 362 A.2d 778, vacated, 423 U.S. 809, 96 S. Ct. 20, 46 L. Ed. 2d 29 (1975), aff'd on remand, 170 Conn. 155, 365 A.2d 393, cert. denied, 429 U.S. 889, 97 S. Ct. 246, 50 L. Ed. 2d 172 (1976).

give effect to the legislative intent"), cert. denied, 265 Conn. 907, 831 A.2d 251 (2003).

The plaintiff argues that *Papa* v. *Greenwich Green, Inc.*, supra, 177 Conn. 295, established the general proposition that " 'owner' within the meaning of . . . § 49-34 [always] include[s] the person owning the property as of the filing of the lien in the town clerk's office." We disagree.

In *Papa*, an action to foreclose a mechanic's lien, the liened property was a recently developed condominium complex. *Papa* v. *Greenwich Green, Inc.*, supra, 177 Conn. 295–96. The defendants were the developer of the complex and certain purchasers of individual units. At issue was whether the purchasers of individual units, who had taken title from the developer prior to the filing of the certificate of lien, were "owners" required to be served. Our Supreme Court held that they were and, because only the developer had been served, that the trial court properly had dismissed the action as to the individual unit owners. Id., 303. Notably, *Papa* did not involve parties who were owners of the liened property at the time the certificate of lien was filed, but no longer were owners at the time of service. As such, the facts of this case clearly are inapposite.

In fact, the holding of *Papa* indicates further that the plaintiff's interpretation of §§ 49-34 and 49-35, even if it were correct, still would be unavailing. The plaintiff concedes that it was properly served with the certificate of lien; its claim is that the lien nevertheless is invalid because Karantonis' daughter, another purported "owner," was not properly served. *Papa*, however, required dismissal of the action only against those owners whom the plaintiff statutorily was required to serve but did not. As to the defendant developer, who was properly served, the lien remained valid. Accordingly, even if §§ 49-34 and 49-35 required the defendant to

serve a copy of his lien on Karantonis' daughter, which we have concluded they did not, his failure to do so would not have rendered the lien invalid as to the plaintiff. For this additional reason, the plaintiff's second claim fails.

### III

The plaintiff's last claim is that Connecticut's mechanic's lien statutes are unconstitutional because they allow for the taking of property without due process of law. We decline to address this claim because it was inadequately presented to the trial court, and the court, therefore, did not decide it.

The following additional procedural history is relevant. In its application to discharge or reduce the defendant's mechanic's lien or to substitute a bond, the plaintiff followed the general statutory form; see General Statutes § 49-35a (b); but also included additional allegations and a request for attorney's fees. The application stated that the defendant's lien was filed without just cause but did not raise any issues relating to the constitutionality of the governing statutes. Neither party, either prior or subsequent to the hearing on the plaintiff's application, submitted a memorandum of law to the court.

The bulk of the hearing on the plaintiff's application was devoted to witness testimony and other evidence pertaining to the first issue in this appeal, specifically, in regard to the nature and the timing of the work performed by the defendant at 36 DeForest Avenue. At the conclusion of evidence, counsel for each party made a brief oral argument. The first and only time the plaintiff raised a claim as to constitutional deficiencies in the statutes was at the conclusion of its argument. Its counsel's argument in this regard may accurately be

described as cursory and superficial,[15] amounting largely to a description of the holdings in two cases he considered pertinent.[16] The plaintiff's counsel referred in global fashion to other decisions without identifying case names or citations. Counsel was not entirely clear in regard to whether he was making the claim pursuant to the state constitution as well as the federal constitution. The court's response to the plaintiff's argument was minimal.[17] The plaintiff's counsel never requested the opportunity to submit a memorandum of law analyzing the constitutional claim.

Subsequent to the hearing, the court issued a memorandum of decision that did not address the plaintiff's constitutional claim. The plaintiff filed this appeal and, thereafter, filed a motion for articulation requesting that the court address his constitutional argument. See Practice Book § 66-5. The court denied the motion. The plaintiff did not file a motion for review with this court. See Practice Book § 66-7.

Connecticut's appellate courts often have recognized that they are not obligated to consider claims not distinctly raised at trial and decided by the trial court. *Celentano* v. *Oaks Condominium Assn.*, 265 Conn. 579, 589 n.9, 830 A.2d 164 (2003); see also Practice Book § 60-5. This admonition is equally applicable to constitutional claims. *State* v. *Rowe*, 279 Conn. 139, 149, 900 A.2d 1276 (2006). On the record presented, we conclude that it would be inappropriate to address the plaintiff's

---

[15] The argument set forth in the plaintiff's appellate briefs is considerably more detailed, comprised of eleven pages of its initial brief and four pages of its reply brief.

[16] The case that the plaintiff's counsel characterized as controlling pertained to prejudgment attachments rather than mechanic's liens. Counsel did not address whether, or to what extent, that distinction could make a difference in a constitutional analysis.

[17] The defendant's counsel did not respond at all to the plaintiff's argument, likely because there was no prior notice that a constitutional claim would be raised.

challenge to a widely utilized remedial procedure. The plaintiff's constitutional claim was submitted to the trial court in a casual and incomplete manner and never was ruled on. Insofar as this appeal is interlocutory, if the plaintiff wants to pursue this claim, there remains the opportunity to do so.

The judgment is affirmed.

In this opinion the other judges concurred.