## SENIEL LUCIEN *v.* MCCORMICK CONSTRUCTION, LLC (AC 30800)

Bishop, DiPentima and Beach, Js.*

Argued February 8—officially released July 6, 2010

* The listing of judges reflects their seniority status on this court as of the date of oral argument.

*Michael J. Barnaby*, for the appellant plaintiff).

*Gerald L. Garlick*, for the appellee (defendant).

*Opinion*

DiPENTIMA, J. The plaintiff, Seniel Lucien, appeals from the judgment of the trial court denying her application to discharge the mechanic's lien filed by the defendant, McCormick Construction, LLC. On appeal, the plaintiff claims that the court improperly concluded that the defendant satisfied its burden of establishing that the plaintiff asserted violations of the Home Improvement Act (act), General Statutes § 20-418 et seq., in bad faith. We reverse the judgment of the trial court.

The parties stipulated to the following facts. In late 2005, the parties commenced negotiations on a contract for the defendant to renovate a residence in Chester that the plaintiff later purchased. On December 13, 2005, the defendant sent a proposed contract to the plaintiff's representative, Arlene Boop, an attorney based in New York. The two sides negotiated the terms of the contract, and, on March 20, 2006, the defendant sent Boop a copy of the contract and other related documents, including a " 'notice of cancellation.' " The plaintiff, however, never signed the contract or any document acknowledging receipt of the notice of cancellation.

The defendant began work on the plaintiff's residence in early May, 2006. From May, 2006, through May, 2007, the defendant sent invoices totaling $323,917.99 to the plaintiff. Of this total, $207,453 represented the original contract price, and the $116,464.99 balance was the

result of change orders. The plaintiff has paid the defendant a total of $211,781.28, and the defendant claims that the plaintiff owes it a balance of $82,698.36.

From at least March, 2007, the plaintiff has communicated to the defendant that she disputes the amount the defendant claims that she owes, the change orders and whether the contract was properly or fully performed by the defendant. Additionally, the plaintiff has maintained that the defendant was responsible for delays in performance under the contract, though the defendant contends that the plaintiff was to blame for any delays.

On or about May 16, 2008, the defendant filed a mechanic's lien with the town of Chester claiming a lien in the principal amount of $99,824.85 against the plaintiff's residence.[1] On or about September 10, 2008, the plaintiff made an application to the Superior Court, pursuant to General Statutes § 49-35a,[2] alleging that there was not probable cause to sustain the validity of the lien and seeking an order for the discharge of the lien pursuant to General Statutes § 49-35b.[3] In seeking

[1] The difference in the amount of the lien and the amount now claimed by the defendant is the result of a payment to a vendor after the initial calculation of the amount of the lien.

[2] General Statutes § 49-35a (a) provides: "Whenever one or more mechanics' liens are placed upon any real estate pursuant to sections 49-33, 49-34, 49-35 and 49-38, the owner of the real estate, if no action to foreclose the lien is then pending before any court, may make application, together with a proposed order and summons, to the superior court for the judicial district in which the lien may be foreclosed under the provisions of section 51-345, or to any judge thereof, that a hearing or hearings be held to determine whether the lien or liens should be discharged or reduced. . . ."

[3] General Statutes § 49-35b provides: "(a) Upon the hearing held on the application or motion set forth in section 49-35a, the lienor shall first be required to establish that there is probable cause to sustain the validity of his lien. Any person entitled to notice under section 49-35a may appear, be heard and prove by clear and convincing evidence that the validity of the lien should not be sustained or the amount of the lien claimed is excessive and should be reduced.

"(b) Upon consideration of the facts before it, the court or judge may: (1) Deny the application or motion if probable cause to sustain the validity

to discharge the mechanic's lien, the plaintiff alleged that the construction contract failed to comply with the act. The court held a hearing regarding the application on September 29, 2008, and issued its memorandum of decision on February 5, 2009.

In its memorandum, the court noted that, based on the stipulated facts, it was unquestionable that the contract violated the act because it was not signed in violation of General Statutes § 20-429 (a) (2), a notice of cancellation was not attached to the contract in violation of General Statutes § 42-135a (2) and the contract failed to provide notice of the homeowner's right to cancellation in violation of § 42-135a (1). Thus, the dispositive issue was "whether noncompliance with the act is excused because [the] plaintiff has asserted this defense in bad faith." After reviewing the facts, the court concluded that "under these circumstances, the defendant has satisfied [its] burden of proving that the plaintiff has acted in bad faith in asserting . . . violations [of the act]. While it is true that [the] plaintiff did make substantial payments on the contract, it is notable that she did not dispute any moneys owed, or the defendant's performance, until shortly before the final balance was rendered in May, 2007. There is no record evidence to suggest that from the commencement of the construction process in March, 2006, until March, 2007, she registered any complaints about the invoice amounts, delays in performance or the quality of [the] defendant's work. Further, it is undisputed that although the contract failed to comply with the [act]

of the lien is established; or (2) order the lien discharged if (A) probable cause to sustain its validity is not established, or (B) by clear and convincing evidence its invalidity is established; or (3) reduce the amount of the lien if the amount is found to be excessive by clear and convincing evidence; or (4) order the lien discharged or reduce the amount of the lien conditioned upon the posting of a bond, with surety, in a sum deemed sufficient by the judge to indemnify the lienor for any damage which may occur by the discharge or the reduction of amount."

in a number of material respects, no mention of non-compliance was raised until almost eighteen months after work on the project commenced. [The] [p]laintiff correctly points out that it would be unusual for a party to a contract to recognize whether it complies with the [act], and therefore the late assertion of that defense should not be the basis of a finding of bad faith. Typically, [the] plaintiff's argument would be persuasive. In this case, however, [the] plaintiff was represented throughout the negotiation process by counsel. If defects in the contract were an issue, they could have, and should have, been timely raised. The assertion of this defense, at the eleventh hour, to defeat a significant claim of nonpayment is not consistent with good faith obligations imposed on both parties to a contract." The court denied the plaintiff's application to discharge the mechanic's lien, and this appeal followed.

On appeal, the plaintiff claims that the defendant failed to satisfy its burden of establishing that she asserted violations of the act in bad faith. Specifically, she argues that the bases supporting the court's finding of bad faith—her failure to raise the violations of the act until after the completion of the project and that she was represented by counsel during negotiations—are not, without more, evidence of bad faith. We agree.

Prior to evaluating the plaintiff's claim, we must first articulate the relevant standard of review. "Because the parties have stipulated to the relevant facts, our review is plenary and we must determine whether the trial court's conclusions of law are legally and logically correct and find support in the stipulated facts." (Internal quotation marks omitted.) *Ace Equipment Sales, Inc.* v. *H.O. Penn Machinery Co.*, 88 Conn. App. 687, 690, 871 A.2d 402, cert. denied, 274 Conn. 909, 876 A.2d 1200 (2005).

"The principles governing the . . . claim of bad faith are well established. In *Barrett Builders* v. *Miller*, [215

Conn. 316, 328, 576 A.2d 455 (1990)], our Supreme Court stated, in dictum, that a homeowner could not avail himself of the protection afforded to him by § 20-429 if he invoked the statute in bad faith. Our Supreme Court subsequently applied the bad faith exception in *Habetz* v. *Condon*, 224 Conn. 231, 618 A.2d 501 (1992), in which it upheld a trial court's factual finding of bad faith. The central element giving rise to this exception is the recognition that to allow the homeowner who acted in bad faith to repudiate the contract and hide behind the act would be to allow him to benefit from his own wrong, and indeed encourage him to act thusly. Proof of bad faith therefore serves to preclude the homeowner from hiding behind the protection of the act. . . . *Habetz* made it clear, however, that mere disagreement about contract performance does not suffice to establish bad faith. *Habetz* defined bad faith as involving actual or constructive fraud, or a design to mislead or deceive another, or a neglect or refusal to fulfill some duty or some contractual obligation, not prompted by an honest mistake as to one's rights or duties, but by some interested or sinister motive. . . . Bad faith means more than mere negligence; it involves a dishonest purpose." (Citation omitted; internal quotation marks omitted.) *New England Custom Concrete, LLC* v. *Carbone*, 102 Conn. App. 652, 660–61, 927 A.2d 333 (2007). "It is the burden of the party asserting the lack of good faith to establish its existence and whether that burden has been satisfied in a particular case is a question of fact."[4] *Habetz* v. *Condon*, supra, 237 n.11.

---

[4] The defendant argues that the issue before that court was "whether there [was] probable cause to sustain the validity of the lien because of the plaintiff's bad faith." The defendant provides no support for the proposition that he must provide only probable cause of bad faith, and we could find none. Although it is true that under § 49-35b (a); see footnote 3 of this opinion; the defendant needed only to show probable cause to sustain the validity of the lien, once this burden was met, the burden shifted to the plaintiff to "prove by clear and convincing evidence that the validity of the lien should not be sustained . . . ." General Statutes § 49-35b (a). It was at this point that the plaintiff raised the issue of the defendant's noncompli-

As it was the defendant that alleged bad faith on the part of the plaintiff, it had the burden of establishing its existence. The court concluded that the defendant had met its burden, reasoning that the plaintiff's representation by counsel throughout the negotiation process and her failure to raise the noncompliance with the act until the defendant raised a claim of nonpayment established bad faith. Our Supreme Court, however, has held that neither of the grounds the court relied on in reaching its conclusion that the defendant had established bad faith on the part of the plaintiff, without additional evidence, rises to the level of bad faith.

In *Wadia Enterprises, Inc.* v. *Hirschfeld,* 224 Conn. 240, 618 A.2d 506 (1992), our Supreme Court considered a similar claim of bad faith on the part of the defendant homeowners in an action brought by the plaintiff to foreclose a mechanic's lien. As evidence of bad faith, the plaintiff noted that the defendants "prepared the underlying defective contract through their New York attorneys and architect and then relied on the same contract as a defense to its enforcement . . . ." Id., 248. In rejecting the allegation of bad faith, the court noted that "[t]he fact that the defendants had their architect and New York attorneys draft the contract

---

ance with the act, and, in order to defeat this claim and prevent the plaintiff from meeting her burden, the defendant asserted, and had to establish, the existence of bad faith.

Although we note that at a hearing to discharge a mechanic's lien, "the [lienor] does not have to establish that he will prevail"; (internal quotation marks omitted) *36 DeForest Avenue, LLC* v. *Creadore,* 99 Conn. App. 690, 695, 915 A.2d 916, cert. denied, 282 Conn. 905, 920 A.2d 311 (2007); even if we assume that the defendant is correct in its assertion that it must prove only that there was probable cause to sustain the validity of the lien because of the plaintiff's bad faith, the facts of this case do not support a finding of probable cause of bad faith. See id. ("[t]he legal idea of probable cause is a bona fide belief in the existence of the facts essential under the law for the action and such as would warrant a man of ordinary caution, prudence and judgment, under the circumstances, in entertaining it" [internal quotation marks omitted]).

does not in and of itself indicate bad faith on the part of the defendants. There is no allegation or proof that the attorneys intentionally omitted [the] requirement [that the contract contain notice of the right of cancellation] in order to have an escape hatch. At most, the New York attorneys were negligent in failing to consult Connecticut law and to include the required clause in the contract. An honest mistake does not rise to the level of bad faith." Id., 248–49. Similarly, in this case there is nothing in the stipulated facts that supports the conclusion that the plaintiff or Boop acted with bad faith in failing to ensure that the contract in this case complied with the act.[5] In the absence of such proof, we cannot conclude that the plaintiff acted in bad faith on this basis.

The court also concluded that the plaintiff acted in bad faith on the basis that she waited until "the eleventh hour" to raise the violations of the act, which the court viewed as "[inconsistent] with good faith obligations imposed on both parties to a contract." "[I]nitially enforcing the contract and subsequently asserting the contract's invalidity . . . does not, by itself, present a claim of bad faith. There is nothing dishonest or sinister about homeowners proceeding on the assumption that there is a valid contract, enforcing its provisions, and later . . . upon learning that the contract is invalid, then exercising their right to repudiate it." *Wadia Enterprises, Inc.* v. *Hirschfeld*, supra, 224 Conn. 249. The facts stipulated to by the parties do not state that the plaintiff knew of the violation earlier, or that she purposely drafted the contract in violation of the act in order to later avoid her obligation to pay. There simply

---

[5] The stipulation of facts does not make clear in what states Boop is admitted to practice law. It describes her only as "a New York based attorney." On the basis of the stipulation, we cannot conclude that she is admitted to practice law in Connecticut and, thus, will not charge her with the burden of knowledge of the act.

is nothing in the stipulated facts that can legally and logically support the court's conclusion that the plaintiff acted with a dishonest purpose in claiming that the defendant violated the act.[6] We therefore conclude that the court improperly denied the plaintiff's application to discharge the mechanic's lien.

The judgment is reversed and the case is remanded with direction to grant the plaintiff's application to discharge the defendant's mechanic's lien.

In this opinion the other judges concurred.

---

[6] The only case cited by the defendant to support its claim of bad faith is *Menillo* v. *Brian Calandro Associates, LLC,* Superior Court, judicial district of Fairfield, Docket No. CV-08-5014822 (July 30, 2008). The *Menillo* case, which held that failure to raise defects of a contract until after a contractor filed its mechanic's lien was evidence of bad faith, is contrary to appellate precedent; see *Wadia Enterprises, Inc.* v. *Hirschfeld,* supra, 224 Conn. 249; and "a decision of the Superior Court is not binding on this court." *Rodia* v. *Tesco Corp.,* 11 Conn. App. 391, 397, 527 A.2d 721 (1987).