## WALPOLE WOODWORKERS, INC. *v.* SID MANNING
### (AC 31447)

DiPentima, C. J., and Alvord and Dupont, Js.

Argued September 22, 2010—officially released January 18, 2011

*David L. Gussak*, for the appellant (defendant).

*Brent M. Stratton*, for the appellee (plaintiff).

*Opinion*

DUPONT, J. The defendant, Sid Manning, appeals from the judgment of the trial court in favor of the plaintiff, Walpole Woodworkers, Inc., in this action for the balance due on a contract to install a fence at the defendant's residence. On appeal, the defendant claims that the trial court improperly concluded that (1) the defendant's conduct amounted to bad faith, (2) the plaintiff was entitled to full recovery under the parties' contract, including interest, attorney's fees and costs, and (3) the defendant's attempt to rescind the contract and his demand for recoupment of sums paid to the plaintiff were unavailing.[1] The primary issue to be

---

[1] The defendant also claims that the court improperly concluded that the contract was enforceable against him despite the fact that he was the only party to the contract to sign it. The following additional facts are necessary to understand the defendant's claim. The defendant objected to the court's acceptance of the attorney fact finder's findings on a number of grounds, including the finding that a written contract existed between the parties even though the only copies of the contract in evidence contained only

resolved is whether the plaintiff is entitled to recover, pursuant to the contract, interest, attorney's fees and costs, despite the court's finding that the plaintiff violated some provisions of the Home Improvement Act (act), General Statutes (Rev. to 2003) § 20-429,[2] because of the defendant's bad faith as found by the court. We conclude that the plaintiff is entitled to recover the value of the work performed but is not entitled to recover, under the "bad faith" exception, additional damages provided for in the contract when the contract is otherwise unenforceable due to the plaintiff's violation of the act. We, therefore, reverse the judgment of the trial court only insofar as it awarded interest, attorney's fees and costs to the plaintiff. We otherwise affirm the judgment of the trial court.

the defendant's and not the plaintiff's signature. The trial court heard the defendant's objections at a hearing on June 15, 2009, and ordered memoranda of law on this issue, which it received June 29, 2009. The court overruled the defendant's objections to the findings on July 6, 2009, in part but did not state its reasons. The court sustained the defendant's objections as to attorney's fees only. The defendant did not seek an articulation of this ruling. Because we address the issue of the enforceability of the contract on a wholly separate ground in part II of this opinion, and because the record is inadequate to review the defendant's claim, we decline to afford it review.

[2] General Statutes (Rev. to 2003) § 20-429 provides in relevant part: "(a) No home improvement contract shall be valid or enforceable against an owner unless it: (1) Is in writing, (2) is signed by the owner and the contractor, (3) contains the entire agreement between the owner and the contractor, (4) contains the date of the transaction, (5) contains the name and address of the contractor, (6) contains a notice of the owner's cancellation rights in accordance with the provisions of [the Home Solicitation Sales Act], (7) contains a starting date and completion date, and (8) is entered into by a registered salesman or registered contractor. . . .

"(c) The contractor shall provide and deliver to the owner, without charge, a completed copy of the home improvement contract at the time such contract is executed. . . .

"(f) Nothing in this section shall preclude a contractor who has complied with subdivisions (1), (2), (6), (7) and (8) of subsection (a) of this section from the recovery of payment for work performed based on the reasonable value of services which were requested by the owner, provided the court determines that it would be inequitable to deny such recovery."

For convenience, all subsequent references to § 20-429 will be to the 2003 revision.

The following facts and procedural history are relevant to our resolution of this appeal. By complaint filed May 14, 2007, the plaintiff alleged that it had performed all of its obligations under a contract with the defendant but that the defendant had not satisfied his obligation to pay for the services rendered. The plaintiff sought to recover money damages, past due balances for services rendered, attorney's fees, interest and costs as provided for in the contract, and such other relief as the court deemed proper. The defendant filed two special defenses alleging that the plaintiff had failed to perform its work in a workmanlike manner, thereby breaching the contract, and that it violated the act in certain enumerated ways. The defendant also filed a counterclaim. In its response to the special defenses and counterclaim, the plaintiff alleged that the defendant had filed his defenses pursuant to the act in bad faith.

Pursuant to Practice Book § 23-53,[3] the case was referred to an attorney fact finder, who heard evidence on the matter on January 26 and February 9, 2009, and, who, on April 20, 2009, made the findings of fact, which follow. The parties entered into a written contract, pursuant to which the plaintiff agreed to install a fence and the defendant agreed to pay $22,318. At the time the defendant executed the contract, he paid a deposit of $11,000. The work was substantiality completed in November, 2004. In May, 2005, the plaintiff sought payment for the balance owed. The defendant refused, stating that his small dog could escape under the fence. The plaintiff designed a free "fix" by adding additional fencing around the bottom of the fence, but the defendant still refused to pay the balance due. In January,

---

[3] Practice Book § 23-53 provides in relevant part: "The court, on its own motion, may refer to a fact finder any contract action pending in the superior court . . . in which money damages only are claimed, which is based upon an express or implied promise to pay a definite sum, and in which the amount, legal interest or property in controversy is less than $50,000, exclusive of interest and costs. . . ."

2006, the plaintiff sent the defendant a written demand for payment under the contract, including attorney's fees, interest and costs as provided therein and commenced litigation thereafter.

The fact finder found that the contract did not comply with the act pursuant to § 20-429 (a) (7).[4] Nonetheless, the fact finder found the issues in favor of the plaintiff, including a finding that the defendant invoked the act in bad faith, and recommended that the court render judgment for the balance due, as well as for attorney's fees, costs and interest per the contract. The defendant objected to the court's acceptance of the findings of fact made by the attorney fact finder. See Practice Book § 23-57. After a hearing on the objection, the court sustained the objection only as to the attorney's fees and reduced the amount of attorney's fees awarded. The court rendered judgment in favor of the plaintiff in accordance with the fact finder's report, as modified by orders of the court. This appeal followed. Additional facts will be set forth as necessary.

In each of his claims, the defendant challenges both the factual conclusions reached by the attorney fact finder and the factual and legal conclusions of the trial court. We set forth our standard of review. "Attorney fact finders are empowered to hear and decide issues of fact on contract actions pending in the Superior Court

---

[4] Specifically, the contract did not contain a starting date and a completion date in violation of § 20-429 (a) (7). The fact finder also found that the contract did not contain the contractor's registration number in violation of § 20-429 (a) (5), although he also found that the plaintiff is a registered home improvement contractor. We note that the statute in effect at the time the contract was executed did not require that the contractor include his registration number. See General Statutes (Rev. to 2003) § 20-429 (a) (5). Although the plaintiff did not produce a copy of the contract signed by the plaintiff, the fact finder did not find that the plaintiff failed to sign the contract. See footnote 1 of this opinion. Accordingly, we will focus our analysis on the plaintiff's failure to include a starting date and a completion date in the contract.

. . . . On appeal, [o]ur function . . . is not to examine the record to see if the trier of fact could have reached a contrary conclusion. . . . Rather, it is the function of this court to determine whether the decision of the trial court is clearly erroneous. . . . This involves a two part function: where the legal conclusions of the court are challenged, we must determine whether they are legally and logically correct and whether they find support in the facts set out in the memorandum of decision; where the factual basis of the court's decision is challenged we must determine whether the facts set out in the memorandum of decision are supported by the evidence or whether, in light of the evidence and the pleadings in the whole record, those facts are clearly erroneous. . . . A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." (Citation omitted; internal quotation marks omitted.) *Lewis* v. *Frazao Building Corp.*, 115 Conn. App. 324, 329, 972 A.2d 284 (2009).

"Finally, we note that, because the attorney [fact finder] does not have the powers of a court and is simply a fact finder, [a]ny legal conclusions reached by an attorney [fact finder] have no conclusive effect. . . . The reviewing court is the effective arbiter of the law and the legal opinions of [an attorney fact finder], like those of the parties, though they may be helpful, carry no weight not justified by their soundness as viewed by the court that renders judgment." (Internal quotation marks omitted.) Id., 329–30. With the foregoing in mind, we now turn to the defendant's specific claims.

## I

We first address the claim that the defendant's conduct did not amount to bad faith. The defendant maintains that there was evidence before the fact finder that

he disputed the quality of the plaintiff's work, which he claims is insufficient to constitute bad faith. The plaintiff claims, in response, that the facts found show the defendant's bad faith intent to avoid paying the balance due on the contract without any defense to payment. We agree with the plaintiff and uphold the trial court's finding of bad faith.

We set forth the applicable principles of law. The act, pursuant to § 20-429 (a), provides that no home improvement contract shall be valid or enforceable against a homeowner unless it meets certain enumerated criteria. "The [act] is a remedial statute that was enacted for the purpose of providing the public with a form of consumer protection against unscrupulous home improvement contractors. . . . The aim of the statute is to promote understanding on the part of consumers with respect to the terms of home improvement contracts and their right to cancel such contracts so as to allow them to make informed decisions when purchasing home improvement services." (Citation omitted.) *Wright Bros. Builders, Inc.* v. *Dowling*, 247 Conn. 218, 231, 720 A.2d 235 (1998). "In *Barrett Builders* v. *Miller*, [215 Conn. 316, 328, 576 A.2d 455 (1990)], our Supreme Court stated, in dictum, that a homeowner could not avail himself of the protection afforded to him by § 20-429 if he invoked the statute in bad faith. Our Supreme Court subsequently applied the bad faith exception in *Habetz* v. *Condon*, 224 Conn. 231, 618 A.2d 501 (1992), in which it upheld a trial court's factual finding of bad faith." *New England Custom Concrete, LLC* v. *Carbone*, 102 Conn. App. 652, 660–61, 927 A.2d 333 (2007).

In *Lucien* v. *McCormick Construction, LLC*, 122 Conn. App. 295, 296, 998 A.2d 250 (2010), this court reversed a trial court's ruling, which had concluded that a homeowner had invoked the act in bad faith. "*Habetz* [v. *Condon*, supra, 224 Conn. 231] made it clear . . .

that mere disagreement about contract performance does not suffice to establish bad faith. *Habetz* defined bad faith as involving actual or constructive fraud, or a design to mislead or deceive another, or a neglect or refusal to fulfill some duty or some contractual obligation, not prompted by an honest mistake as to one's rights or duties, but by some interested or sinister motive. . . . Bad faith means more than mere negligence; it involves a dishonest purpose." (Internal quotation marks omitted.) *Lucien* v. *McCormick Construction, LLC*, supra, 300. In *Lucien*, the trial court had concluded that the contractor had met its burden to establish the homeowner's bad faith, reasoning that the homeowner's representation by counsel throughout the negotiation process and the homeowner's failure to raise the noncompliance with the act until the defendant raised a claim of nonpayment established bad faith. Id., 301. This court concluded that there was "simply . . . nothing in the stipulated facts that can legally and logically support the court's conclusion that the plaintiff acted with a dishonest purpose in claiming that the defendant violated the act." Id., 302–303.

In the present case, the fact finder recited the following facts as evidence of the defendant's bad faith. After the work was substantially completed, the defendant, from November, 2004, through May, 2005, delayed payment of the balance due and, when pressed, revealed the existence of his small dog and his newly voiced concern about its escape. The defendant delayed the plaintiff's installation of a free fix for another six months because the parties could not agree on a date for the fix to be installed and could not agree that the balance would be paid upon completion. After the fix was installed, the defendant continued to refuse to pay the balance due, even though his only real concern about the work was addressed by the fix. Moreover, he testified at trial that the fence work was completed; he

simply decided he would not pay the balance due on the contract. The fact finder concluded that the plaintiff proved the defendant's bad faith, and the trial court accepted that finding over the defendant's objection.

On the basis of our review of the record, we conclude that the court properly found that the defendant acted in bad faith when he invoked the act as a defense to payment of the balance due on the home improvement contract.

## II

The defendant next claims that the bad faith exception does not entitle the plaintiff, who violated the act, to full recovery under the contract, including interest, costs and attorney's fees. We agree with the defendant and conclude that, under the bad faith exception, the plaintiff is entitled only to recover the value of the work performed because the contract is otherwise unenforceable due to the plaintiff's violation of the act.

The following additional facts, as found by the attorney fact finder and accepted by the trial court, are relevant to the defendant's claim. Pursuant to § 20-429 (a) (7) of the act, the contract was deficient in that it failed to set forth start and completion times for the work performed. The failure to set forth a start date and a completion date was not merely a technical deficiency under the act.[5] Nonetheless, the plaintiff had proven that the defendant raised the act as a defense to the plaintiff's breach of contract action in bad faith and that proof, according to the fact finder, entitled the

[5] Compare *Wright Bros. Builders, Inc.* v. *Dowling*, supra, 247 Conn. 232–33 (holding that home improvement contractor could enforce contract that failed to comply with act in ways that court characterized as "minor" and "highly technical," including that cancellation notice failed to contain date of transaction and date by which defendants could cancel contract on notice of cancellation, which information "easily could have been gleaned from even the most cursory review of the contract").

plaintiff to full recovery under the contract, including costs, interest and attorney's fees as provided therein. In his objection to the court's acceptance of these findings, the defendant challenged the conclusion that even if bad faith exists, the plaintiff was entitled to more than the contract amount. The trial court overruled that objection in part, rendering judgment awarding costs and interest pursuant to the contract but reducing the award of attorney's fees. Specifically, the court awarded the plaintiff $11,318 for the balance due on the work performed, $712.19 in costs, $1697.70 in attorney's fees and $7470 in interest.

"Because the requirements of the [act] are mandatory and must be strictly construed, the absence of [a commencement and a completion date] constitutes a violation of the [act] that renders the contract unenforceable. . . . Thus, the plaintiff is precluded from [any] recovery against the defendants unless the plaintiff can establish that the defendants' invocation of the [act] as the basis for their repudiation of the contract was in bad faith." (Citations omitted.) *Rizzo Pool Co.* v. *Del Grosso*, 232 Conn. 666, 680, 657 A.2d 1087 (1995).

In the present case, the plaintiff proved to the trial court that the defendant invoked the act in bad faith. Before proceeding to the question presented, namely, whether the plaintiff is entitled to costs, interest and attorney's fees pursuant to the bad faith exception, we must first address the defendant's claims as to the applicability of § 20-429 (f). Insofar as the defendant argues that the legislature overruled the bad faith exception by enacting § 20-429 (f), we find no merit to this argument. Similarly unavailing is the defendant's argument that the plaintiff must prove *both* the homeowner's bad faith and the contractor's compliance with § 20-429 (f) in order to recover.

Section 20-429 (f) provides: "Nothing in this section shall preclude a contractor who has complied with subdivisions (1), (2), (6), (7) and (8) of subsection (a) of this section from the recovery of payment for work performed based on the reasonable value of services which were requested by the owner, provided the court determines that it would be inequitable to deny such recovery." "The legislature added subsection (f) to § 20-429 when it enacted No. 93-215, § 1, of the 1993 Public Acts, in order to address what it considered to be the harsh result of *Barrett* [*Builders* v. *Miller*, supra, 215 Conn. 316] . . . .[6] Subsection (f) of § 20-429 allows quantum meruit recovery in certain cases of partial noncompliance with subsection (a) . . . . Thus, if a court determines that the requirements of subsection (f) are met, it may award damages under a theory of unjust enrichment even if all of the requirements of the [act] are not met." (Citations omitted; internal quotation marks omitted.) *Newtown Pool Construction, LLC* v. *Errico*, 103 Conn. App. 566, 569–70, 930 A.2d 50 (2007).

As noted by our Supreme Court, albeit prior to the addition of subsection (f): "In the absence of specific legislative indication . . . we do not read the act to override the general principle embodied in the bad faith exception: that an individual should not profit from his own deceptive and unscrupulous conduct. This court

[6] In *Barrett Builders* v. *Miller*, supra, 215 Conn. 322–23, our Supreme Court denied a contractor recovery for work performed because it concluded that the act was intended to abrogate common-law remedies, including quasi contract claims. "See 36 S. Proc., Pt. 10, 1993 Sess., p. 3451, remarks of Senator Thomas F. Upson (As you know, there was a Supreme Court decision that said if it wasn't in writing and value had been put in . . . the contractor could not get any money back at all. So this at least attempts to alleviate partially that situation.); 36 H.R. Proc., Pt. 16, 1993 Sess., p. 5611, remarks of Representative Thomas A. Fox, chairman of the general law committee (discussing *Barrett Builders* and stating that it is somewhat unfair to require that each i be dotted and t be crossed)." (Internal quotation marks omitted.) *Economos* v. *Liljedahl Bros., Inc.*, 279 Conn. 300, 310, 901 A.2d 1198 (2006).

never intended to advance the cause of the unscrupulous. We can only presume that the legislature had a similar intent. The question is . . . whether, in the absence of specific legislative indication otherwise, a doctrine founded on public policy and containing a strong strain of estoppel can prevent a misbehaving party from invoking the benefits of a statute which is absolute on its face." *Habetz* v. *Condon*, supra, 224 Conn. 239–40.

We do not read subsection (f) to override the bad faith exception because it does not, by its terms, purport to address the defense of bad faith. Rather, § 20-429 (f) addresses the availability of restitutionary remedies to a contractor who performs work under a partially defective home improvement contract, regardless of whether the homeowner acted in bad faith. Thus, a plaintiff contractor who enters into a contract for home improvement services but who does not comply with the act so that the contract is unenforceable has two potential avenues for recovery: § 20-429 (f) and the bad faith exception. The former avenue was created by the legislature, while the latter was judicially created.

We now turn to the question presented, which is whether the plaintiff is entitled to recover, under the bad faith exception, interest, attorney's fees and costs as provided for in the contract when the contract is otherwise unenforceable due to the plaintiff's violation of the act. Precedent from our Supreme Court suggests that the answer to that question is no: the bad faith exception allows a contractor to recover only the value of the work performed after it has completed its end of the bargain.

In *Habetz* v. *Condon*, supra, 224 Conn. 234–35, the trial court found that the contract did not conform with § 20-429 (a) (6) of the act but, nonetheless, rendered judgment in favor of the defendant contractor on both

counts of his counterclaim, awarding him $16,244, the amount unpaid under the original contract and for extras performed at the homeowners' request, because it found that the homeowners had raised the act as a defense in bad faith. Our Supreme Court "recognized that proof of bad faith on the part of the homeowner is an exception to what might otherwise be a harsh lesson to the home improvement contractor unable to recover due to a violation of the act. The central element giving rise to this exception is the recognition that to allow the homeowner who acted in bad faith to repudiate the contract and hide behind the act would be to allow him to benefit from his own wrong, and indeed encourage him to act thusly. Proof of bad faith therefore serves to preclude the homeowner from hiding behind the protection of the act." Id., 237. "[A] contractor, otherwise precluded from recovering moneys owed for his work because of a violation of the act, must be permitted to assert that the homeowner's bad faith precludes [the homeowner] from safely repudiating the contract and hiding behind the act in order to bar the contractor's recovery." Id., 238.

In *Rizzo Pool Co.* v. *Del Grosso,* supra, 232 Conn. 668, a contractor brought an action for breach of contract against the homeowners when the homeowners refused to allow the contractor to install a swimming pool pursuant to their contract. The contract to install the swimming pool did not conform with § 20-429 (a) (7) in that it did not contain a commencement or a completion date and was thus unenforceable because it did not comply with the act. Id., 680. The contractor attempted to invoke the bad faith exception and recover for the homeowners' contractual breach under the liquidated damages provision of the contract. Id., 681 n.24. Our Supreme Court concluded that the contractor could not recover under that provision because the contract was unenforceable. Id., 680–81. "The bad faith exception

. . . is intended to preclude a homeowner from unfairly invoking the [act] [t]o deny the contractor any opportunity of recovery after he has completed his end of the bargain . . . ." (Internal quotation marks omitted.) Id., 681. The contractor had not performed the home improvement services contemplated, and, thus, he could not recover. Id., 681–82.

We find that *Habetz* v. *Condon*, supra, 224 Conn. 231, and *Rizzo Pool Co.* v. *Del Grosso*, supra, 232 Conn. 666, control the question presented. In the present case, the contract was deficient in that it failed to set forth a commencement date and a completion date for the work performed. The contract was thus rendered unenforceable. See General Statutes (Rev. to 2003) § 20-429 (a) (7); *Rizzo Pool Co.* v. *Del Grosso*, supra, 680. The plaintiff established that it completed the installation of the fence, that the defendant failed to pay the balance due in bad faith and that the defendant raised the act as a defense to payment in bad faith. See *Habetz* v. *Condon*, supra, 237–38. Such proof of bad faith precludes the homeowner from hiding behind the protection of the act. Id., 237. Accordingly, it was legally and logically correct for the trial court to conclude that the plaintiff was entitled to recover the $11,318 for the balance due for the work performed. The plaintiff raised no basis other than the contract to support an award for attorney's fees, costs and interest. Because the contract was unenforceable, there was no basis to support the award of attorney's fees, costs and interest.

### III

The defendant also claims that the trial court improperly concluded that his attempt to rescind the contract almost three years after the fence was installed and his demand for recoupment of his deposit were unavailing. The theory under which the defendant believed he was entitled to rescind the contract and recoup his deposit

is, at best, unclear. We find this claim to be without merit.

The following additional facts are relevant to the defendant's claim. The defendant filed a three count counterclaim alleging that the plaintiff's performance was substandard, that its violations of the act constituted per se violations of the Connecticut Unfair Trade Practices Act[7] (CUTPA) and that the defendant was entitled to rescind the contract and recoup the consideration he had paid. In the third count, the defendant pleaded that he was entitled to rescind the contract and recoup all moneys paid pursuant to the "terms and conditions of the [act] and [CUTPA] . . . ." The defendant failed to demonstrate any damages arising out of the claimed violation of the act and the court declined to award any damages pursuant to CUTPA. The fact finder believed that, in the third count of the counterclaim, captioned "[r]ecoupment," the defendant appeared to be making a claim for equitable relief pursuant to CUTPA.[8] The fact finder concluded that granting recoupment would be inequitable because the defendant would have received a benefit, a fence around his property for $11,000 even though he had agreed to pay $22,000 for it. Further, the fact finder concluded that the provision in the contract regarding the defendant's right to cancellation and rescission complied with the requirements of the act, § 20-429 (a) (6).[9] The trial court accepted these findings.

---

[7] General Statutes § 42-110a et seq.

[8] In August, 2008, well after the present litigation commenced, the defendant purported to rescind the contract by means of a letter from his counsel to the plaintiff's counsel, and he demanded the return of his deposit. In the letter, the defendant claimed that he was entitled to rescission based on the plaintiff's failure to comply with the act and its violation of CUTPA. The defendant annexed that letter to his counterclaim and referred to it in count three.

[9] Regarding the right to cancellation, § 20-429 (a) (6) incorporates the provisions of chapter 740, the Home Solicitation Sales Act, by reference. "The section of the [Home Solicitation Sales Act] that pertains to notice of cancellation is [General Statutes] § 42-135a. That section provides in relevant

On appeal, the defendant does not challenge the trial court's findings regarding the lack of damages arising out of the claimed violation of CUTPA. Nor does he challenge the finding that the notice of cancellation complied with the requirements of the act. Rather, the defendant, relying on an isolated provision in the Truth-In-Lending Act, General Statutes § 36a-675 et seq., maintains that he was entitled to rescind the contract and recoup his $11,000 deposit at any time "within three years of the completion of the transaction" because the plaintiff did not give the defendant a copy of the contract signed by both parties.[10] He claims that, in § 20-429 (e), the act requires that the contractor comply with the Truth-in-Lending Act when a homeowner, for example, agrees to pay a finance charge for the privilege of paying the contract price in installments over a period of time.[11] This portion of § 20-429 (e) does not apply to

part that it is the duty of the seller of the services to furnish [to] each buyer . . . a completed form in duplicate, captioned NOTICE OF CANCELLATION, which shall be attached to the contract . . . and to complete both copies of the latter form, before furnishing them to the buyer, by entering [onto the forms] the name of the seller, the address of the seller's place of business, the date of the transaction, and the date, not earlier than *the third business day following the date of the transaction*, by which the buyer may give notice of cancellation." (Emphasis altered; internal quotation marks omitted.) *Blacker* v. *Crapo*, supra, 112 Conn. App. 805–806.

[10] Neither the fact finder nor the trial court ever made an express finding as to whether the contract was signed by both parties. See footnote 1 of this opinion. It is unclear whether this precise claim was advanced at the trial court. The defendant referred to the Truth-in-Lending Act in his objection to the court's acceptance of the finding of facts. Specifically, he objected to the fact finder's conclusion that the notice of his right to rescission was adequate pursuant to "[c]hapter 740," the Truth-in-Lending Act. Chapter 740 of the General Statutes is the Home Solicitation Sales Act. See footnote 9 of this opinion.

[11] General Statutes § 20-429 (e) provides in relevant part: "Each home improvement contract in which the owner agrees to repay the contractor an amount loaned or advanced to the owner by the contractor for the purposes of paying for the goods and services provided in such contract, or which contains a finance charge, (1) shall set forth the information required to be disclosed pursuant to the Truth-in-Lending Act, sections 36a-675 to 36a-685, inclusive, (2) shall allow the owner to pay off in advance the full amount due and obtain a partial refund of any unearned finance

the contract at issue. Moreover, were we to agree with the defendant's position, we would, in effect, award him an unwarranted windfall that the legislature could not have intended. See *Hees* v. *Burke Construction, Inc.*, 290 Conn. 1, 15–16, 961 A.2d 373 (2009) (holding that act does not preclude trial court from reducing homeowner's damages by amount left unpaid under contract, otherwise act "could be read to allow a home-owner affirmatively to obtain a free home improvement project from the contractor, rather than simply to pre-vent the contractor from enforcing otherwise valid claims against the homeowner"). Accordingly, we con-clude that this claim is without merit.

The judgment is reversed only as to the award to the plaintiff of attorney's fees, costs and interest, and the case is remanded with direction to vacate that award, and to render judgment awarding the plaintiff the bal-ance due on the work performed. The judgment is affirmed in all other respects.

In this opinion the other judges concurred.

charge, and (3) may contain a finance charge set at a rate of not more than the rate allowed for loans pursuant to section 37-4. As used in this subsection, 'finance charge' means the amount in excess of the cash price for goods and services under the home improvement contract to be paid by the owner for the privilege of paying the contract price in installments over a period of time."