Foster *v.* Atwater.

———•◆•———

SYLVANUS N. FOSTER AND ANOTHER *vs.* WILLIAM J. ATWATER.

Where a grantee accepts a deed which, in its terms, imposes some payment or duty upon him, he becomes bound to make such payment or perform such duty, and the law implies a promise on his part on which assumpsit will lie.

Foster *v.* Atwater.

Land was conveyed "subject to $1900 mortgages, which the grantee assumes and agrees to pay and save the grantor harmless therefrom." The grantee accepted the deed. Held—

1. That the undertaking of the grantee was not one of indemnity merely, but an absolute one to pay the mortgage debts.

2. That on his neglect to pay them at maturity the grantor could sustain an action for a breach of the contract, without having been himself compelled to pay them.

3. That the undertaking of the grantee was not within the statute of frauds as not in writing.

ASSUMPSIT, to recover the amount due on a note secured by a mortgage, the defendant having taken a conveyance of the mortgaged premises subject to the mortgage and with an assumption of the mortgage debt; brought to the Superior Court in New Haven County. The following facts were found by a committee:

The note in question was made by George L. Carrington for the sum of $900, dated July 11th, 1873, and payable three months after its date to the order of Henry Buckingham, and was secured by a mortgage of certain real estate in New Haven, which was already subject to two prior mortgages of $500 each, one the individual debt of Carrington, and the other assumed by him when he purchased the property. The note was delivered to Buckingham, who endorsed the same and delivered it for a good consideration to the plaintiffs on the 2d of August, 1873, before it fell due.

The plaintiffs endorsed and procured the discount of the note at bank on the 16th of August, 1873, and when it fell due, on the 14th of October, 1873, neither Carrington nor Buckingham paying the same, the plaintiffs paid and took up the note and now hold it, never having received any payment whatever upon it.

On the 16th of September, 1873, the defendant and Carrington exchanged with each other several pieces of real estate, by warranty deeds, all subject to mortgages. One of the pieces so exchanged was the piece mortgaged by Carrington to secure the note in suit, and the deed by which the land was conveyed by Carrington to the defendant contained the following clause:—"Said premises are conveyed subject to

nineteen hundred dollars mortgages, which, with accrued interest, the grantee assumes and agrees to pay, and save me harmless from the same." The note in suit formed part of the $1900 referred to in this clause. The defendant accepted the deed and caused it to be recorded.

When the plaintiffs received the note from Buckingham they did not know that it was secured by mortgage, but relied solely on the responsibility of Carrington and Buckingham, and learned the facts with regard to the mortgage about the time the note fell due.

On the 15th of October, 1873, the day after the note fell due, Buckingham assigned the mortgage deed and all indebtedness evidenced thereby to the plaintiffs, and on the same day Carrington also assigned to the plaintiffs all rights of action accruing to him under the clause referred to in his deed to the defendant. After the note fell due the plaintiff demanded payment of the defendant, which he refused.

Upon these facts the case was reserved for the advice of this court.

*Alling*, for the plaintiffs.

1. The acceptance of the deed by the defendant, with the clause in it providing for his assuming and agreeing to pay the mortgage debts, is conclusive evidence of a promise by the defendant to Carrington to pay the mortgage debts. 2 Washb. R. Prop., 194; *Pike* v. *Brown*, 7 Cush., 133; *Goodwin* v. *Gilbert*, 9 Mass., 510; *Newell* v. *Hill*, 2 Met., 180; *Mellen* v. *Whipple*, 1 Gray, 320; *Hinsdale* v. *Humphrey*, 15 Conn., 431; *Olmstead* v. *Brush*, 27 id., 536; *Randall* v. *Latham*, 36 id., 50; *Elting* v. *Clinton Mills Co.*, id., 296; *Trotter* v. *Hughes*, 12 N. York, 74; *Belmont* v. *Coman*, 22 id., 438; *Atlantic Dock Co.* v. *Leavitt*, 54 id., 35. Such a clause creates a personal liability of the grantee to the grantor, and it is not divested by any subsequent transfer of the property by the grantee. *Pike* v. *Brown*, 7 Cush., 135; *Randall* v. *Latham*, 36 Conn., 50.

2. The contract of the defendant was not one of indemnity merely, but was an absolute promise to pay the mortgage

debts. *Lathrop* v. *Atwood*, 21 Conn., 117; *Redfield* v. *Haight*, 27 id., 31; *Rawson* v. *Copland*, 2 Sandf. Ch., 251; 3 Parsons on Cont., 186; Rawle on Covenants of Title, 93.

3. And the defendant became personally liable to the mortgagees for the payment of the mortgage debts thus assumed. *Thompson* v. *Bertram*, 14 Iowa, 476; *Burke* v. *Gummey*, 49 Penn. S. R., 518; *Lawrence* v. *Fox*, 20 N. York, 268; *Burr* v. *Beers*, 24 id., 178; *Ricard* v. *Sanderson*, 41 id., 179; *Thorp* v. *Keokuk Coal Co.*, 48 id., 253; *Ritter* v. *Phillips*, 53 id., 586.

4. The promise is not within the statute of frauds as not being in writing. *Goodwin* v. *Gilbert*, 9 Mass., 513; *Pike* v. *Brown*, 7 Cush., 135; *Pratt* v. *Humphrey*, 22 Conn., 317; *Waterman's Appeal from Probate*, 26 id., 109; *Aldrich* v. *Ames*, 9 Gray, 76; *Randall* v. *Latham*, 36 id., 50; *Atlantic Dock Co.* v. *Leavitt*, 54 N. York, 35.

*Watrous* and *Hamilton*, for the defendant.

1. The act of purchase itself, and the mere acceptance of a *deed poll* reciting that the premises conveyed are subject to a mortgage debt and that such debt is to be paid by the purchaser, will not create a personal liability on the part of the purchaser for such debt. The mortgage debt remains a charge on the land; but there is no presumption that the grantee has assumed the personal liabilities of the mortgagor. 2 Washb. on R. Prop., (3d ed.,) 518, § 10; *Mason* v. *Barnard*, 36 Misso., 384, 391; *Johnson* v. *Monell*, 13 Iowa, 300, 303. The clause in question does not alone and of itself contain an agreement, on the part of the purchaser, to become personally liable for the mortgage debt. To create such liability, the purchaser must have *knowingly* and *intentionally*, at the time of the purchase, entered into an express agreement to that effect, and the existence of such agreement must be shown by evidence other than the mere acceptance of a *deed poll*. The *circumstances attending the purchase* must be considered to show the intention of the parties. *Stebbins* v. *Hall*, 29 Barb., 524, 534; *Tillotson* v. *Boyd*, 4 Sandf. Sup. Ct., 516, 523; *Gage* v. *Brewster*, 31 N. York, 218, 221. The object and purpose

of a *deed poll* are to pass the title to the land. Hence such deed is open to explanation in every particular, except to defeat this object and purpose, and is conclusive on the *grantor alone*, and even on *him* but in this one respect. *Gully* v. *Grubbs*, 1 J. J. Marsh., 389; *Collins* v. *Tillou*, 26 Conn., 368, 374. The New York cases, which seem to hold a different doctrine, are all explainable on either one of two grounds. 1st. The mode of conveyancing in that state is by means of a *bipartite* instrument, and even when called a "*deed poll*" is virtually a deed *inter partes*, and is held to be executed by the grantee as well as by the grantor. *Burr* v. *Beers*, 24 N. York, 178; *Thorp* v. *Keokuk Coal Co.*, 48 id., 254; *Atlantic Dock Co.* v. *Leavitt*, 54 id., 40. 2d. The right to hold the purchaser personally liable for the mortgage debt is based upon an equitable principle growing out of the statute relating to foreclosures. *Curtis* v. *Tyler*, 9 Paige, 436; *Storm* v. *Waddell*, 2 Sandf. Ch., 529. In the case of *Lawrence* v. *Fox*, 20 N. York, 268, there was an express promise by the defendant to pay to the plaintiff, and the court carefully distinguishes it from the case of *Mellen* v. *Whipple*, 1 Gray, 317, which latter case is precisely the one at bar. The case of *Burr* v. *Beers* was the first attempt to base the purchaser's liability to a personal action for the mortgage debt on some other ground than the equity of the New York statute; but the decision in this case, although followed, in a qualified sense, in *Thorp* v. *Keokuk Coal Co.* and *Atlantic Dock Co.* v. *Leavitt*, was rendered on the authority of *Lawrence* v. *Fox*, and has never been adopted as law in any other state. 24 N. York, 180. The foregoing New York cases are all in direct opposition to that of *Clapp* v. *Lawton*, 31 Conn., 95.

2. The defendant took the land subject to the mortgage debts. The land thereby became in his hands the primary fund from which these debts were to be paid. The second part of the clause, "assumes and agrees to pay and save me harmless from the same," must be understood in reference to the mode of procedure in foreclosure cases in this state, to mean that if the land should prove insufficient to pay the debt, and the mortgagor should sue the maker of the note for

the balance, the purchaser would refund the amount of such balance to the grantor.

3. The plaintiffs have no cause of action in their own right. Even where the purchaser has made an *express agreement* with the vendor, who is also the mortgagor of the premises, to become personally liable for the mortgage debt, the mortgagor still remains the principal debtor. The only remedies of the mortgagee are, either to foreclose the mortgage, or to proceed against the maker of the note in a personal action; and no personal action will lie against the purchaser by the mortgagee, until he has first taken legal proceedings against the mortgagor as the principal debtor, and has failed to recover from *him* the mortgage debt. 2 Washb. on R. Prop., (3d ed.,) 571, § 7; *Hasley* v. *Reed*, 9 Paige, 446, 452; *Marsh* v. *Pike*, 1 Sand. Ch., 211; *Mellen* v. *Whipple*, 1 Gray, 317, 324. The relation of the purchaser to the mortgagee is merely that of surety for the mortgagor, and as such he is liable only to the same extent as an endorser of a non-negotiable note, and in accordance with the decisions of this state, legal proceedings must first be had against the principal before such surety can be subjected. 1 Swift Dig., 435. There was here no privity of contract between the plaintiffs and the defendant. *Mellen* v. *Whipple*, 1 Gray, 317. No consideration moved from them to him. The plaintiffs took the note before the defendant had purchased the property, and they took it solely on the credit of other parties. They did not become the assignees of the mortgage security till after the note fell due. As the assignees of Carrington, the plaintiffs have no greater rights than Carrington himself; and *he* has no cause of action against the defendant until he has been compelled to pay the whole or a part of the mortgage debt. Although as between the mortgagee, on the one hand, and the vendor and purchaser on the other, the vendor is the principal debtor; yet, as between the vendor and the purchaser, considered apart from the mortgagee, the position is reversed, and the vendor becomes the surety to the purchaser, Carrington, in relation to the defendant, is merely the defendant's surety. 2 Washb. on R. Prop., (3d ed.,) 571, § 7; *Marsh* v. *Pike*, 1 Sand. Ch.,

211. And as surety to the defendant, Carrington has no claim that he can either enforce himself or assign, until he has been actually damnified. 1 Swift's Dig., 412; *Brentnal* v. *Holmes*, 1 Root, 291. The promise of the defendant is to indemnify Carrington after loss sustained, and the words "save me harmless" are conclusive of this meaning, and would be without sense or application unless *that* were the extent of the agreement between the parties. Carrington, therefore, has no cause of action against the defendant *in the present status* of things. A liability alone is no ground for an action, neither *is it assignable*. *Booth* v. *Starr*, 1 Conn., 244, 249; *Aberdeen* v. *Blackmar*, 6 Hill, 324; Sedgw. on Dam., 312. There is, therefore, no principle of either law or equity upon which this case can be relieved from the doctrine of *Mellen* v. *Whipple*, which even the New York courts do not attempt to override in principle.

4. Any promise on the part of the defendant to the plaintiffs, to become personally answerable to them for this debt and duty of Carrington, would be void by the statute of frauds. *Clapp* v. *Lawton*, 31 Conn., 95, 100.

PARK, C. J. In *Pike* v. *Brown*, 7 Cushing, 133, the court say:—"The principle is well settled, that where one by deed poll grants land, and conveys any right, title or interest in real estate to another, and where there is any money to be paid by the grantee to the grantor, or any other debt or duty to be performed by the grantee to the grantor, or for his use and benefit, and the grantee accepts the deed and enters on the estate, the grantee becomes bound to make such payment or perform such duty, and not having sealed the instrument he is not bound by it as a deed; but it being a duty, the law implies a promise to perform it, upon which promise, in case of failure, assumpsit will lie."

The doctrine of this case is well established in Connecticut, as will be seen by the following cases: *Hinsdale* v. *Humphrey*, 15 Conn., 431; *Randall* v. *Latham*, 36 Conn., 48; *Townsend* v. *Ward*, 27 Conn., 610; *Elting* v. *Clinton Mills Co.*, 36 Conn., 296.

In the case in question, the clause in the deed to the defendant which creates the liability that is the subject of the present controversy, is as follows: "Said premises are conveyed subject to nineteen hundred dollars mortgages, which with accrued interest the grantee assumes and agrees to pay, and save me harmless from the same."

It is established by the foregoing cases, and is not denied by the defendant, that he did assume and promise the grantor in the deed in the language quoted, that he would pay the mortgages on the property and save the grantor harmless from the same; but he claims on several grounds that he is not liable in this action. He says, in the first place, that he is not personally liable to pay the note in suit; that if personally liable, he is liable only for such deficiency as shall remain, after resort has first been had to the land for payment of the plaintiffs' claim; that if liable at all he is liable only to the grantor of his deed, and that too after he has been compelled to pay the note in controversy; that if the land should prove insufficient to pay the note, and the mortgagee or his assigns should sue the grantor for the balance due on the note and recover, then the engagement of the defendant was, that he would refund the amount recovered to the grantor; that the relation of the defendant to the plaintiffs is that of surety merely, and consequently legal proceedings must first be instituted against the mortgagor, the maker, and principal debtor of the note in suit, before the liability of the defendant accrues; that there is no privity of contract to support the plaintiffs' claim; and finally, that the contract is within the statute of frauds and perjuries.

The contract entered into between the defendant and Carrington, the grantor of the defendant's deed, must be considered in the light of the attending circumstances in order to learn what was the contract between them. Carrington had given the note, the amount of which is in controversy, and had mortgaged the land to secure the same, and was now engaged in selling the equity of redemption to the defendant. He was making an arrangement to part with all his interest in the property to the defendant, for the amount of the mort-

gage notes on the property, and a further consideration otherwise provided for. They agreed upon the entire price to be paid. The land was encumbered by mortgage notes, and Carrington was bound to pay them. He was desirous, if a sale should be effected, to make an arrangement for the payment of the notes, thus divesting himself of all interest in the land and relieving himself of all responsibility on the notes so far as it could be done between them.

It made no difference to the defendant whether he should pay the price of the land to Carrington, or to the holders of the notes, so far as the amount was concerned. But if he should pay Carrington, he would have no security that Carrington would pay the incumbrances on the property. If he should pay the holders of the notes, he would be secure in this respect. It was for the defendant's interest, therefore, so long as he must pay the money consideration for the land to one party or the other, to pay it to the holders of the notes. These considerations constrain us to believe that the defendant entered into an absolute agreement with Carrington to pay the notes at maturity, as well as to save him harmless from them; and that such is the proper construction of the contract, there being nothing in its terms to conflict with such construction. It is true that the words " save me harmless from the same," standing alone, would imply an engagement of indemnity merely, but they are used in the contract in connection with words that imply an absolute engagement, and must mean that, should the defendant fail to pay the notes in accordance with his contract, and in consequence thereof Carrington should be compelled to pay them, then the defendant would make good the damage. In their connection they mean no more than the law would imply from an absolute contract to pay the notes. How could an absolute contract to pay the notes, under the circumstances, injure the defendant more than a contract of indemnity merely? In either case it would come upon him finally to pay them, or pay their amount. No question was made but that the notes were good and valid, and consequently they would have to be paid. This fact was apparent. Of what concern, therefore,

could it possibly have been to the defendant, in what form he should become bound? Indeed it would seem that he would be anxious, inasmuch as he must pay their amount to some one, to pay it to the holders of the notes directly, and to bind himself accordingly, and not by a contract of indemnity merely. We are satisfied that the claims of the defendant in this part of the case are untenable.

It appears in the case that the defendant neglected and refused to pay the note in question at its maturity. He therefore violated his contract with Carrington by this neglect, and a right of action thereupon accrued to him on the contract for a breach of the same. It is said by the defendant that Carrington suffered no damage by a breach of the contract; that inasmuch as the money was not to be paid to him, but to a third party to the contract, he could suffer no damage till he should be compelled to pay the note by the holder, and that consequently he cannot sustain an action on the contract till such time shall arrive.

The defendant's claim would be well founded if the contract was one of indemnity merely, for in that case it would not be broken till Carrington should be compelled to pay the note. But here the contract is an absolute one to pay the note at maturity, as well as a contract of indemnity, and Carrington has an interest in its performance, for by the terms of the contract his liability on the note would cease at its maturity, as it was then to be paid, but the violation of the contract continued his liability and gave him a right of action on the contract. This view of the question is fully sustained by the following cases: *Lathrop* v. *Atwood*, 21 Conn., 117; *Redfield* v. *Haight*, 27 Conn., 31; *Ex-parte Negus*, 7 Wend., 499; *Booth* v. *Starr*, 1 Conn., 244.

It appears in the case that after the breach of the contract by the defendant, and before the bringing of this suit, Carrington assigned his right of action against the defendant and all his interest in the contract to the plaintiffs, who were the endorsers and holders of one of the notes which the defendant had promised to pay at their maturity, and which note is the one on which the present suit is brought.

The assignment transferred the chose in action and all Carrington's interest in the contract to the plaintiffs, and the statute in relation to the assignment of choses in action to bonâ fide assignees authorized the plaintiffs to bring an action in their own names on the contract. *Elting* v. *Clinton Mills Co.*, 36 Conn., 296.

In relation to the claim that the contract is within the statute of frauds and perjuries because it is not in writing, it should be observed that the plaintiffs do not seek to recover on their contract relations with the defendant, but on the contract relations between the defendant and Carrington, assigned to the plaintiffs. But if the exigencies of the case require it, we think, in accordance with the intimation of this court in *Randall* v. *Latham*, 36 Conn., 48, that the contract in this case was in writing, although it was not formally signed by the defendant. It has all the certainty of being his contract that it would have had if it had been so signed. The terms of the contract are in writing, and the defendant's acceptance of the deed, in which the contract exists, and of which it forms a part of the consideration, is equivalent to the signature of the defendant to the contract, for it can as easily, and with equal certainty, be shown to be his contract. A contract of this character is obviously not within the object of the statute. That statute was intended to do away with the temptation to commit fraud and perjury in attempting to make one party answer for the debt, default or miscarriage of another. In cases of this character no such temptation can by possibility exist, for the case is as much beyond the reach of fraud as it would be if the contract was formally executed by the defendant.

Furthermore, all the cases hold that the contract stated in a deed poll is binding between the parties. The statute of frauds makes void all contracts within its provisions; hence, contracts stated in deed polls cannot be within the statute.

We advise judgment for the plaintiffs.

In this opinion the other judges concurred.