******************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.
******************************************

# MARY RANDAZZO *v.* JOHN ALAN SAKON
## (AC 39197)

Alvord, Bright and Lavery, Js.

*Syllabus*

The plaintiff landowner sought to recover damages arising out of the defendant's breach of an agreement to pay the property taxes on a portion of the plaintiff's property that allowed road access to the defendant's commercial property development and over which the defendant held an easement. The matter was tried before an attorney fact finder, who recommended that judgment be rendered in favor of the plaintiff, including an award of statutory interest (§ 37-3a). The trial court rendered judgment in the plaintiff's favor, from which the defendant appealed to this court. Thereafter, the trial court sought clarification from the fact finder regarding his recommended award of interest and rendered judgment in accordance with the fact finder's clarification, and the defendant filed an amended appeal. *Held*:

1. The trial court properly applied the six year statute of limitations (§ 52-576 [a]) for breach of contract actions, rather than the three year statute of limitations (§ 52-598a) for indemnification actions: in his report, the fact finder determined that the plaintiff sent the defendant annual bills for the amount of taxes related to the easement portion of her property, but that the defendant refused to pay, and that she commenced this action to enforce her rights under a certain global settlement agreement between the parties, seeking reimbursement for money that the defendant had agreed to pay the plaintiff as set forth in the easement deed, and not to recover damages for which she was found to be liable to a third party; moreover, to the extent that the defendant claimed that because he did not sign the easement before it was recorded on the land records, he could not be held to the terms of the global agreement, that claim was unavailing, as the defendant, by accepting the easement, became contractually bound by its terms, including the payment of the taxes on the easement.

2. The defendant could not prevail on his claim that the trial court erred in concluding that the statute of frauds did not bar the plaintiff's action, the defendant having been bound by the provisions in the deed of conveyance once he accepted the conveyance; the defendant had reviewed the easement, rendered payment for the easement, and signed an escrow process letter that provided that the easement would be binding on the parties if the defendant received zoning approval for his development, which he did, and, therefore, it was clear that a contract existed between the parties and that the statute of frauds did not bar the action.

3. The finding that the town imposed taxes on the plaintiff's property, including the portion over which the defendant held an easement, and did not value and tax the easement separately from the remaineder of the plaintiff's land was supported by the record: although easements generally cannot be assessed and taxed separately, the present case did not involve a tax imposed by a town on an easement but, rather, concerned whether the defendant had breached his agreement with the plaintiff by failing to reimburse the plaintiff for a portion of the property tax assessed on the plaintiff's property, there was nothing in the law that prohibited the dominant and servient owners of an easement from entering into a contract setting forth responsibility for the property taxes on the land on which the easement was located, and there was ample evidence to support the fact finder's finding that the town had taxed the plaintiff's property and had not separately taxed the easement, and that pursuant to the parties' agreement, the defendant was obligated to reimburse the plaintiff for the taxes on the land under the easement; moreover, the defendant's claims that he did not need to reimburse the plaintiff because the municipality taxed him directly for the easement and that his commercial tenant, V Co., should share in the tax reimbursement to the plaintiff were unavailing, as the defendant voluntarily had agreed to reimburse the plaintiff for the taxes assessed on the portion

of the plaintiff's property over which he held the easement and was not assessed a tax by the town, and nothing in the parties' agreement imposed an obligation on V Co.

Argued January 3—officially released April 17, 2018

*Procedural History*

Action to recover damages for breach of contract, brought to the Superior Court in the judicial district of Hartford, where the matter was referred to *James J. Gadarowski*, attorney fact finder, who filed a report recommending judgment for the plaintiff; thereafter, the court, *Dubay, J.*, granted the plaintiff's motion for judgment and rendered partial judgment for the plaintiff in accordance with the report, from which the defendant appealed to this court; subsequently, the attorney fact finder filed a report concerning prejudgment interest; thereafter, the court, *Wahla, J.*, rendered judgment for the plaintiff in accordance with the report, and the defendant filed an amended appeal. *Appeal dismissed in part; affirmed.*

*John A. Sakon*, self-represented, the appellant (defendant).

*Thomas P. Moriarty*, for the appellee (plaintiff).

*Opinion*

BRIGHT, J. In this amended appeal, the defendant, John Alan Sakon, appeals from the judgment of the trial court, rendered in favor of the plaintiff, Mary Randazzo, acting as trustee for A&F Foods, a general partnership.[1] On appeal, the defendant claims that the trial court erred in accepting the findings and recommendations of the attorney fact finder, James J. Gadarowski (fact finder), and in rendering judgment in accordance with his recommendations. More specifically, the defendant claims that the court improperly: (1) concluded that the plaintiff's cause of action sounds in contract, rather than indemnification, and, therefore, applied the incorrect statute of limitations; (2) concluded that the statute of frauds, General Statutes § 52-550, was inapplicable to this case; and (3) accepted the finding that the town of Glastonbury (town) had imposed real estate taxes on the easement area. We dismiss the defendant's original appeal and, with respect to his amended appeal, we disagree with each of the defendant's claims and, therefore, affirm the judgment of the trial court.

In his findings of fact and recommended award of damages, the fact finder set forth the following relevant background: "A long trek would best describe the trip undertaken to develop a large shopping center in Glastonbury . . . by the defendant. The center is to utilize approximately 13.5 acres of land. The process for the new center began in the 1980s when [the] defendant began to acquire properties and easements. In the 1990s a number of lawsuits concerning various issues related to the area to be developed were filed both in Connecticut and federal courts by [the] defendant. Finally, an agreement was reached in February, 1999, called the 'global settlement' by the parties. The actual settlement document was signed on February 5, 1999, by various parties but was not submitted as evidence at the hearing. Based upon other correspondence and the documents prepared, signed, and recorded, the settlement, in general, provided for a ground lease from [the] plaintiff to [the] defendant for a parcel of land in the area to be developed; an easement . . . from [the] plaintiff to [the] defendant that would allow access from . . . Main [Street] over [the] plaintiff's property to [the] defendant's development;[2] payment of $100,000 by [the] defendant . . . and the filing of withdrawals by [the] defendant of four . . . state lawsuits, a federal district court action, and an appeal to the [United States Court of Appeals for the Second Circuit]." (Footnote added.)

The parties also drafted an escrow process letter, dated February 9, 1999, signed by the plaintiff's attorney and by the defendant, which listed all documents necessary to consummate the global settlement agreement.[3] The letter indicated that the defendant would be submitting an application to the town's Plan and Zoning Commission (commission) for modification of an existing

application involving the plaintiff's tenant, Valvoline, and giving the commission information on the easement, and it provided that if this application was not approved by the commission at its February 16, 1999 meeting, then the entire global settlement agreement was null and void, and all documents, including the easement agreement, would be destroyed and would not be binding on any party. The letter further provided that if the commission approved the application at its February 16, 1999 meeting, then all of the documents would become "immediately legally binding and effective upon the parties . . . [and] the mortgage, easement agreement and subordination agreement" would be recorded. The fact finder found that the defendant and his attorney reviewed all of the documents, including the easement. Upon receiving the easement, the defendant submitted the modified application to the commission, and the commission approved the modified application at its February 16, 1999 meeting. Thereafter, the recordable documents were filed, funds were disbursed, and the settlement became final in accordance with the parties' agreement.

Regarding the taxes due to the town for the land over which the defendant had obtained the easement from the plaintiff, the defendant, in a letter dated February 6, 2000, wrote to the plaintiff: "I agree that Randazzo is not responsible for any of the taxes. Since Valvoline and I share the easement, we each should be responsible for [half] its assessment where the easement is in common. Since Valvoline gains no benefit, I would be happy to pay the portion in full. I would also pay for any assessment of the sign easement area." When the defendant failed to reimburse the plaintiff for the taxes paid, the plaintiff refused to provide requested documentation to the defendant in connection with some financing he was seeking. The plaintiff demanded $4439.76 from the defendant to cover taxes for the grand list years of 1998-2001 assessed against the easement area. The defendant made the payment and sent a letter, dated May 3, 2001, to the plaintiff providing in relevant part: "*I honestly believe that I have already paid all taxes that are my responsibility under the documents*. Accordingly, this payment is made under protest and, inter alia, I reserve the right to contest the amount or validity of the imposition by appropriate proceedings . . . . I offered to assume the payment of taxes for the easement area solely in exchange for good relations between the parties. Given our history, I wish only to deal with the town in regard to property taxes." (Emphasis in original.) The town assessor at that time, Leon Jendrzejczyk, was asked by the plaintiff to calculate the taxes on the land underlying the easement separately, and he agreed to do so, showing his method of calculation.[4] The plaintiff, thereafter, utilized this method of calculation and sent yearly billings to the defendant seeking reimbursement of the amount due

for taxes each year for the easement area. The defendant, however, did not pay these amounts.

In 2010, the plaintiff commenced this breach of contract action against the defendant. In her revised complaint, the plaintiff alleged that the defendant failed to comply with the parties' agreement that he would reimburse her for the real estate taxes assessed on that portion of the plaintiff's land encumbered by the easement. The plaintiff sought reimbursement for the grand list years 2002 through 2010. The court referred the case to the fact finder, who recommended that judgment be rendered in favor of the plaintiff in the amount of $15,529.45 plus "statutory interest."[5] The trial court rendered judgment in accordance with this recommendation, and the defendant appealed. The plaintiff then filed a motion for clarification regarding the applicable rate of interest awarded and the date on which interest began to accrue. The trial court referred the motion to the fact finder, who clarified that the plaintiff was entitled to prejudgment interest under General Statutes § 37-3a at a rate of 10 percent per annum from the date each payment accrued to the date judgment was rendered.[6] The court, thereafter, rendered judgment in accordance with this clarification, and the defendant amended his appeal to include the new judgment.[7] Additional facts will be included as necessary.

On appeal, the defendant challenges the factual conclusions reached by the fact finder, as well as the legal conclusions reached by the trial court. Our standard of review, therefore, is as follows. "Attorney fact finders are empowered to hear and decide issues of fact on contract actions pending in the Superior Court . . . . On appeal, [o]ur function . . . is not to examine the record to see if the trier of fact could have reached a contrary conclusion. . . . Rather, it is the function of this court to determine whether the decision of the trial court is clearly erroneous. . . . This involves a two part function: where the legal conclusions of the court are challenged, we must determine whether they are legally and logically correct and whether they find support in the facts set out in the memorandum of decision; where the factual basis of the court's decision is challenged we must determine whether the facts set out in the memorandum of decision are supported by the evidence or whether, in light of the evidence and the pleadings in the whole record, those facts are clearly erroneous. . . . A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. . . .

"Finally, we note that, because the attorney [fact finder] does not have the powers of a court and is simply a fact finder, [a]ny legal conclusions reached by

an attorney [fact finder] have no conclusive effect. . . . The reviewing court is the effective arbiter of the law and the legal opinions of [a fact finder], like those of the parties, though they may be helpful, carry no weight not justified by their soundness as viewed by the court that renders judgment." (Citation omitted; internal quotation marks omitted.) *Walpole Woodworkers, Inc.* v. *Manning*, 126 Conn. App. 94, 98–99, 11 A.3d 165 (2011), aff'd, 307 Conn. 582, 57 A.3d 730 (2012). With this standard of review in mind, we now consider the defendant's claims.

I

The defendant claims that the court erred when it concluded that the plaintiff's cause of action sounds in contract, rather than indemnification, and that the court, therefore, applied the incorrect statute of limitations. The defendant argues that the court should have applied the three year statute of limitations set forth in General Statutes § 52-598a,[8] concerning actions for indemnification, rather than the six year statute of limitations set forth in General Statutes § 52-576 (a),[9] concerning actions on simple or implied contracts.[10] We disagree.

"The determination of which statute of limitations applies to a given action is a question of law over which our review is plenary." *Vaccaro* v. *Shell Beach Condo., Inc.*, 169 Conn. App. 21, 29, 148 A.3d 1123 (2016), cert. denied, 324 Conn. 917, 154 A.3d 1008 (2017).

In his decision, the fact finder found that the plaintiff sent the defendant yearly bills for the amount of taxes related to the easement portion of her property, but the defendant refused to pay. In his supplemental decision, the fact finder stated that "it is clear that upon the facts, including that the plaintiff has not sought . . . indemnification by either judgment or settlement . . . § 52-598a would not apply to this situation. This, instead, is a claim under a contractual obligation and is governed by the six (6) year limit under the terms of . . . § 52-576 (a)." The defendant objected to this finding, and the trial court overruled the objection.

On appeal, the defendant first contends that there is no enforceable contract between the parties. This claim is without merit. The fact finder specifically found that there was a global agreement between the parties that involved many documents, including the easement agreement. He further found that the defendant and his attorney reviewed these documents, including the easement agreement. Furthermore, the fact finder found that there was no evidence that the defendant had disputed the wording of the easement, had sought the return of the $100,000 that he had paid for the easement, or ever offered to return the easement to the plaintiff. The fact finder also specifically credited the testimony of the defendant that the easement was of

great value to him. The defendant challenges none of these findings on appeal.

Furthermore, the defendant does not contest the validity of the easement agreement. Rather, his claim, although not developed, appears to include the contention that because he did not sign the easement before it was recorded on the land records, he cannot be held to the terms of the global agreement on a contract theory. For over 100 years, however, the law has been to the contrary.

For example, in *Elting* v. *Clinton Mills Co.*, 36 Conn. 296, 299 (1869), the plaintiff's predecessor in title, Amasa L. Hyde, conveyed by deed an easement to the defendants, which contained a clause requiring the defendants to remove a river wall from the easement area and to rebuild it at their own cost. Id., 301. The deed was executed by Hyde only. Id., 297. The defendants accepted the deed and recorded it. Id., 301. Following Hyde's sale of his property, he executed and delivered to the plaintiff, the new owner, a written assignment of all his interest in the agreement with the defendants regarding the river wall. Id., 302. The plaintiff then demanded that the defendants remove the existing wall and rebuild it in a different location. Id., 301–302. When the defendants refused, the plaintiff commenced suit. Id., 302. The Superior Court reserved for the advice of the Supreme Court the question of whether the plaintiff was entitled to judgment. Id., 304.

Our Supreme Court explained that it was "unquestionable" that there had been a valid and binding contract between the defendants and the original grantor, Hyde, because the defendants had accepted the deeded easement. Id. The question with which the court grappled was whether the conveyance by Hyde to another, without reference to the provision contained in the easement to the defendants, discharged the defendants from their obligations. Id. Although the court declined to determine whether the contract ran with the land or was personal in nature, it held that the contract was binding on the defendants because they had accepted the deeded easement, and, therefore, they were not relieved of their obligation regarding the river wall. Id.

Additionally, in *Foster* v. *Atwater*, 42 Conn. 244, 250 (1875), our Supreme Court explained: "The principle is well settled, that where one by deed poll[11] grants land, and conveys any right, title or interest in real estate to another, and where there is any money to be paid by the grantee to the grantor, or any other debt or duty to be performed by the grantee to the grantor, or for his use and benefit, and the grantee accepts the deed and enters on the estate, the grantee becomes bound to make such payment or perform such duty, and not having sealed the instrument he is not bound by it as a deed; but it being a duty, *the law implies a promise to perform it,* upon which promise, in case of failure,

assumpsit will lie."[12] (Emphasis added; footnote added; internal quotation marks omitted.) In this case, the defendant, by accepting the easement, became contractually bound by its terms, including the payment of taxes.

Alternatively, the defendant argues that, even if there is an enforceable contract, "the language in the agreement demonstrates that it is an indemnification." Accordingly, he argues, "the Superior Court ought to have found that the statute of limitations applicable is three (3) year[s] as [the parties'] contract language states that it is an indemnification agreement." The plaintiff argues that "the plaintiff is not seeking indemnification for losses it has incurred pursuant to either a judgment or settlement in a third party action. Rather, the plaintiff is seeking its right to indemnification or reimbursement in accordance with its easement agreement with the defendant. Thus . . . § 52-576 (a) is the correct statute of limitations . . . ." We agree with the plaintiff.

Our Supreme Court addressed this issue in *Amoco Oil Co.* v. *Liberty Auto & Electric Co.*, 262 Conn. 142, 810 A.2d 259 (2002). In *Amoco Oil Co.*, the plaintiff oil company commenced an action against the defendant contractor claiming, in part, that it was entitled to indemnification because the defendant was negligent when it installed underground tanks on the plaintiff's property. Id., 145–46. On appeal, our Supreme Court agreed, in relevant part, with the trial court's holding that the plaintiff's claim sounded in breach of contract, rather than indemnification. Id., 148.

Our Supreme Court explained: "Our analysis begins with the contract provision on which [the plaintiff] relies in asserting its claim in count one of its complaint. Among other things, that provision purports to require [the defendant] to reimburse [the plaintiff] for and indemnify [the plaintiff] against loss, costs, damage, expense, claims and liability arising out of work performed by [the defendant] under the contract. Count one of [the plaintiff's] complaint is based solely on damage to [the plaintiff's] property allegedly caused by [the defendant's] negligent and improper installation of the tank, not from losses that arise from [the defendant's] liability to a third party. . . . Count one, therefore, is improperly characterized as a claim for indemnification; it is, rather, a claim for damages for [the plaintiff's] own losses. Although [the plaintiff] maintains that its claim arises under a provision of its contract with [the defendant] entitled 'Liability and Indemnity,' a claim for indemnity and a claim for one's first party losses are not one and the same." (Citation omitted.) Id., 148.

"Notwithstanding our conclusion that [the plaintiff's] claim is not an indemnification claim, there is another reason why [the plaintiff's] reliance on § 52-598a is mis-

placed. [Section] 52-598a provides that a party seeking indemnification may bring an indemnification action within three years from the date an action against it, *by a third party, has been determined 'by either judgment or settlement.'* . . . [The plaintiff] did not allege in count one of its complaint that it sought indemnification for losses it had incurred pursuant to either a judgment or settlement in a third party action. Rather, [it] alleged that it had 'a right to indemnification in accordance with the terms and provisions of its contract with [the defendant] for all damages . . . incurred as a result of [the leaking tank]. Thus, we agree with the trial court that § 52-576 (a) rather than § 52-598a applies to [the plaintiff's] claim." (Emphasis in original; footnote omitted.) Id., 152.

Similarly, "the common-law doctrine of indemnification permits a tortfeasor to assert a claim *only* against another *liable* tortfeasor." (Emphasis in original.) *Crotta* v. *Home Depot, Inc.*, 249 Conn. 634, 642, 732 A.2d 767 (1999). "In an action for indemnity . . . one tortfeasor seeks to impose total liability upon another [tortfeasor]." (Internal quotation marks omitted.) *Bristol* v. *Dickau Bus Co.*, 63 Conn. App. 770, 773, 779 A.2d 152 (2001).

In the present case, the easement provision specifically provides in relevant part that the defendant "agrees to indemnify . . . [the plaintiff] from . . . any and all real estate taxes imposed upon the Easement Area, provided that [the defendant] is not separately taxed therefor." The defendant paid for the easement, reviewed the terms of the easement deed, and signed a document that provided that the "easement agreement" would be binding at the moment the commission approved the revised application. The fact finder found that the plaintiff sent the defendant yearly bills for the amount of taxes related to the easement portion of her property, but he refused to pay. The reimbursement sought by the plaintiff in this case is not for damages for which the plaintiff was found liable to a third party; rather, this reimbursement is for money that the plaintiff and the defendant agreed would be an ongoing obligation of the defendant as set forth in the easement deed itself. The plaintiff is not seeking indemnity from the defendant for a third party tort action for which the plaintiff owed damages as a result of a judgment or a settlement. See General Statutes § 52-598a. The plaintiff is seeking to enforce an ongoing financial obligation for which the defendant had contracted when he accepted the deeded easement. See *Elting* v. *Clinton Mills Co.*, supra, 36 Conn. 304; *Foster* v. *Atwater*, supra, 42 Conn. 250.

Accordingly, the trial court properly applied the six year statute of limitations for breach of contract actions, rather than the three year statute of limitations for indemnification actions.

## II

The defendant next claims that the court erred in concluding that the statute of frauds did not bar the plaintiff's cause of action. The defendant contends, in relevant part, that because he did not sign the easement, it does not comply with the statute of frauds, and, therefore, the provision in the easement requiring him to pay the taxes is not binding on him. He also argues that there was no evidence of part performance that would support a finding that he agreed to the payment of taxes, and that there is nothing to support an application of equitable estoppel. The plaintiff argues that, "in light of the settlement agreement [that the defendant] signed, in which he acknowledged the easement would be binding on him, his argument is without merit." The plaintiff further argues that "it is settled law that if a grantee accepts a deed of conveyance, he is bound by its covenants even though the grantee did not sign the document." Furthermore, the plaintiff argues, "equitable estoppel removed the easement agreement from the operation of the statute of frauds." We conclude that a grantee is bound by the provisions in a deed of conveyance once he accepts the conveyance. Accordingly, we conclude that the court properly determined that the statute of frauds did not bar the plaintiff's cause of action.[13]

Whether the statute of frauds applies in any given case involves an issue of statutory interpretation, which is a question of law, and therefore appellate review of the issue is plenary. See *Kalas* v. *Cook*, 70 Conn. App. 477, 482–83, 800 A.2d 553 (2002).

As we set forth in part I of this opinion, "[t]he principle is well settled, that where one by deed poll grants land, and conveys any right, title or interest in real estate to another, and where there is any money to be paid by the grantee to the grantor, or any other debt or duty to be performed by the grantee to the grantor, or for his use and benefit, *and the grantee accepts the deed and enters on the estate*, the grantee becomes bound to make such payment or perform such duty, and not having sealed the instrument he is not bound by it as a deed; but it being a duty, the law implies a promise to perform it, upon which promise, in case of failure, assumpsit will lie." (Emphasis added; internal quotation marks omitted.) *Foster* v. *Atwater*, supra, 42 Conn. 250.

In *Foster*, the defendant had assumed and promised the grantor, via language contained in a deed, to pay the mortgages on the property. Id., 251. He asserted several defenses in the action, including the statute of frauds on the ground that he had not signed the deed. Id. As to the statute of frauds defense, our Supreme Court explained: "[T]he contract in this case was in writing, although it was not formally signed by the

defendant. It has all the certainty of being his contract that it would have had if it had been so signed. The terms of the contract are in writing, and the defendant's acceptance of the deed, in which the contract exists, and of which it forms a part of the consideration, is equivalent to the signature of the defendant to the contract, for it can as easily, and with equal certainty, be shown to be his contract. A contract of this character is obviously not within the object of the statute. That statute was intended to do away with the temptation to commit fraud and perjury in attempting to make one party answer for the debt, default or miscarriage of another. In cases of this character no such temptation can by possibility exist, for the case is as much beyond the reach of fraud as it would be if the contract was formally executed by the defendant. Furthermore, all the cases hold that the contract stated in a deed poll is binding between the parties. The statute of frauds makes void all contracts within its provisions; hence, contracts stated in deed polls cannot be within the statute." Id., 254; see also *Elting* v. *Clinton Mills Co.*, supra, 36 Conn. 304 (holding it was "unquestionable" that there had been valid and binding contract between defendants and grantor because defendants had accepted deeded easement).

In the present case, the defendant reviewed the easement, rendered payment for the easement, and signed an escrow process letter that provided that the easement would be binding on the parties if the commission approved the revised application, which the defendant himself submitted; the defendant does not question that the commission approved the revised application. Considering these facts, it is clear that a contract existed between the parties and that the statute of frauds does not bar the plaintiff's cause of action.

### III

The defendant also claims that the court erred in accepting the finding that the town had imposed real estate taxes on the easement area, without recognizing that the state does not allow taxes to be assessed on easements. Specifically, he argues: "No tax can be imposed upon the easement area as easements are not separately assessed for taxation. Any tax imposed upon the easement area arises out of Valvoline's [the other user of the easement] use of the easement area for its driveways and [the] plaintiff's remaining property rights in the servient estate. The defendant has already [borne] his burden for taxes by paying the increased assessment of the lands . . . serviced by the easement. To allocate additional tax burden on [the] defendant for lands in the easement area would result in double taxation. . . . That is why long held Connecticut law holds easements are not taxable." The defendant also argues that the fact finder "has ignored the fact that the easement area is shared by other tenant(s) of the plaintiff, and the

plaintiff reserved the easement area for future use to [herself] not inconsistent with the grant of the easement." We conclude that the defendant's claim is without merit.

"[W]here the legal conclusions of the court are challenged, we must determine whether they are legally and logically correct and whether they find support in the facts . . . . [W]here the factual basis of the court's decision is challenged we must determine whether the facts . . . are supported by the evidence or whether, in light of the evidence and the pleadings in the whole record, those facts are clearly erroneous." (Internal quotation marks omitted.) *Walpole Woodworkers, Inc.* v. *Manning*, supra, 126 Conn. App. 99.

We address first the defendant's claim that the fact finder's award amounted to an impermissible tax on an easement. The defendant relies principally on *Breezy Knoll Assn., Inc.* v. *Morris*, 286 Conn. 766, 946 A.2d 215 (2008), and General Statutes § 12-64 (a) for the proposition that "[a]s easements are incapable of existence separate and apart from the particular land, they are not assessed separately for the real estate taxation."[14] We agree that easements generally cannot be assessed and taxed separately; this case, however, does not involve a tax imposed by a town on an easement. The issue in this case is whether the defendant has breached his agreement with the plaintiff by failing to reimburse the plaintiff for a portion of the property tax on the plaintiff's property. We are aware of nothing in the law that prohibits the dominant and servient owners of an easement from entering into a contract setting forth responsibility for the property taxes on the land upon which the easement lies, and the defendant has not provided a citation to any authority that would support such a prohibition. The fact finder resolved the parties' dispute over this issue by finding that the town had taxed the plaintiff's property and had not separately taxed the easement. Consequently, the defendant, pursuant to the parties' agreement, was obligated to reimburse the plaintiff for the taxes on the land under the easement. This finding was supported by ample evidence.

In particular, the testimony of Nicole Lintereur, the town assessor, provided a sufficient factual basis for the fact finder to conclude that the town did not value and tax the easement separately from the remainder of the plaintiff's land. There also was considerable testimony from Lintereur that supports the finding that the town assessed taxes on *the plaintiff's property*, upon a portion of which the defendant holds an easement. Specifically, Lintereur testified that the plaintiff's property was .79 acres, and that the town billed the plaintiff directly for taxes on that property. She testified that the easement runs through the .79 acres of land, and it measures .32 acres in size. When asked whether that

.32 acres of land is assessed by the town *to the plaintiff*, Lintereur affirmed that it is assessed to the plaintiff. When specifically asked if the town ever assessed the defendant for taxes on the easement area, Lintereur said no. Lintereur also responded affirmatively when asked whether the plaintiff is "assessed for the .79 acres, which includes the easement area . . . ." Additionally, when asked, "[w]hen an easement is recorded on the land records, how do you deal with that from an assessment standpoint; do you tax the easement?" Lintereur responded, "[n]o . . . . It's not its own separate parcel." Accordingly, the finding that the town imposed taxes on the plaintiff's property, including the portion over which the defendant held an easement, and did not separately tax the defendant for the easement, is supported by the record.

We find similarly unpersuasive the defendant's argument that he was taxed directly by the town for the increase in value of his property by virtue of having the easement, and, therefore, any payment to the plaintiff for her taxes for that area amounts to double taxation. The facts of this case demonstrate that the defendant contracted to reimburse the plaintiff for the taxes assessed on the portion of the plaintiff's property over which the defendant held the easement. This was a voluntary agreement that the defendant made with the plaintiff and was not a tax assessed to the defendant by the town. Accordingly, it does not amount to double taxation but, rather, is part of a contractual agreement between two private parties.

As to the defendant's claim that Valvoline should share in the tax reimbursement to the plaintiff for the easement area because it also makes use of the easement, we are not persuaded. The defendant voluntarily assumed the responsibility to reimburse the plaintiff for the taxes assessed. He agreed to be bound by the provisions in the easement, one of which included the obligation to reimburse the plaintiff for the taxes paid on that portion of her property. There is nothing in the agreement that imposes an obligation on Valvoline. Accordingly, the contention that Valvoline should be held responsible for a portion of the burden that the defendant voluntarily assumed is without merit.[15]

The defendant's original appeal is dismissed; the judgment is affirmed with respect to the defendant's amended appeal.

In this opinion the other judges concurred.

[1] The complaint in this matter very clearly sets forth that this case is brought by Mary Randazzo in her capacity as trustee for A&F Foods. The summons, however, erroneously lists the plaintiff only as Mary Randazzo. The case caption in the Superior Court followed the summons. Because there is no question that Randazzo is acting only in her capacity as trustee, we conclude that this merely is a scrivener's error. See *Birkhamshaw* v. *Socha*, 156 Conn. App 453, 465, 115 A.3d 1 ("[a]lthough the writ of summons need not be technically perfect . . . the plaintiff's complaint must contain the basic information and direction normally included in a writ of summons" [internal quotation marks omitted]), cert. denied, 317 Conn. 913, 116 A.3d

812 (2015); General Statutes § 52-123 ("[n]o writ, pleading, judgment or any kind of proceeding in court or course of justice shall be abated, suspended, set aside or reversed for any kind of circumstantial errors, mistakes or defects, if the person and the cause may be rightly understood and intended by the court"). Accordingly, all references to the plaintiff in this opinion are to Randazzo, acting as trustee for A&F Foods, and references to the plaintiff's property are to the property of the trust.

[2] The easement provides in relevant part: "KNOW ALL MEN BY THESE PRESENTS That MARY RANDAZZO, Trustee . . . ('Grantor'), for the consideration of One Dollar ($1.00) and other valuable considerations received to its full satisfaction of JOHN ALAN SAKON . . . ('Grantee'), does give, grant, bargain, sell and confirm unto said Grantee, his heirs, successors and assigns forever, WITH WARRANTY COVENANTS, the following easements:

"(a) a permanent easement and right of way, in common with others, to lay, maintain, operate, construct, use, alter, repair and replace an access road and electrical lines and other utilities and appurtenances thereto, in, through, on and over a certain piece or parcel of land . . . more particularly described in Schedule A attached hereto ('Easement Area') . . . .

"Within the easement area, and subject to the terms of this Easement, the Grantee shall have the right to construct maintain, inspect, use, operate, repair and replace an access road for vehicular and pedestrian traffic to and from the Benefited Property and electrical lines, lighting facilities, drainage, storm and sanitary sewer lines and other utilities and appurtenances necessary or convenient for development and use of the Benefited Property, and to enter in and upon said Easement Area and to pass over the same and excavate therein for said purposes . . . .

"Grantee shall construct and, for long as Grantee is making use of the Easement Area, shall maintain and repair the access road and appurtenances with the Easement Area in good condition and repair . . . at Grantee's sole costs and expense. Grantee hereby agrees to indemnify and hold harmless Grantor from any claims, judgments, suits, obligations, costs and expenses (a) arising out of Grantee's failure to pay, when due, any and all costs relating to the Grantee's construction and maintenance of said access road or appurtenances . . . and (b) in any way arising out of the use, construction or maintenance of said access road or appurtenances . . . and (c) any and all real estate taxes imposed upon the Easement Area, provided that Grantee is not separately taxed therefor. . . ."

[3] The letter provided that all parties would sign the "documents necessary to consummate settlement of all appeals and withdrawal of all actions and releases of all parties, to be held in escrow . . . including . . . the ground lease . . . the easement agreement . . . the mortgage . . . the promissory note . . . the release agreements . . . withdrawal of the deferral appeal . . . stipulation and withdrawal of the two state court appeals . . . [and the] subordination agreement."

[4] The fact finder stated that Jendrzejczyk testified before him and opined that these types of requests were not unusual. We note that the defendant has not furnished a transcript of Jendrzejczyk's testimony. In fact, although the hearing before the fact finder was conducted over seven separates dates, with several witnesses, the defendant has provided us with *excerpts* of transcripts from only three of those dates. Nevertheless, we conclude that these transcripts are sufficient for us to address the defendant's claims on appeal.

[5] At the hearing before the fact finder, the plaintiff also introduced evidence that the defendant owed moneys for grand list years 2011 through 2013. The plaintiff, thereafter, filed a revised complaint to include these years, and the defendant filed an objection, which the court sustained.

[6] Pursuant to General Statutes § 37-3a (a), "interest at the rate of ten per cent a year, and no more, may be recovered and allowed in civil actions . . . as damages for the detention of money after it becomes payable."

[7] Because the defendant's original appeal was taken before the rate of statutory prejudgment interest was determined, the appeal is subject to dismissal pursuant to *Gianetti* v. *Meszoros*, 268 Conn. 424, 426, 844 A.2d 851 (2004), for lack of a final judgment. In *Gianetti*, our Supreme Court explained that, because the 10 percent interest rate set forth in § 37-3a is not a fixed rate of interest but, rather, is the maximum rate of interest that may be awarded under its provisions, a judgment awarding prejudgment interest under the statute must set forth the rate awarded in order to be a final judgment. Id.; see also *Morgan* v. *Morgan*, 136 Conn. App. 371, 372, 46 A.3d 255 (2012) (no appealable final judgment if court renders judgment awarding prejudgment interest pursuant to § 37-3a but does not determine

rate of such interest).

Although we conclude, sua sponte, that the defendant's original appeal was not taken from a final judgment and, therefore, must be dismissed, his amended appeal is jurisdictionally proper. See Practice Book § 61-9 ("[i]f the original appeal is dismissed for lack of jurisdiction, the amended appeal shall remain pending if it was filed from a judgment or order from which an original appeal properly could have been filed"). Accordingly, this court has jurisdiction to consider the defendant's claims in the context of his amended appeal, which was taken from a final judgment, despite the jurisdictional defect in his original appeal. See, e.g., *Rosa* v. *Lawrence & Memorial Hospital*, 145 Conn. App. 275, 282 n.9, 74 A.3d 534 (2013) (dismissing original appeal for lack of final judgment but reviewing claims under amended appeal pursuant to § 61-9); *Midland Funding, LLC* v. *Tripp*, 134 Conn. App. 195, 196 n.1, 38 A.3d 221 (2012) (dismissing original appeal sua sponte but reviewing claims under amended appeal pursuant to § 61-9).

[8] General Statutes § 52-598a provides: "Notwithstanding any provision of this chapter, an action for indemnification may be brought within three years from the date of the determination of the action against the party which is seeking indemnification by either judgment or settlement."

[9] General Statutes § 52-576 (a) provides: "No action for an account, or on any simple or implied contract, or on any contract in writing, shall be brought but within six years after the right of action accrues, except as provided in subsection (b) of this section."

[10] A review of the record in this case reveals that the defendant specially pleaded in his first special defense that the plaintiff's action was "barred by the applicable statute of limitations . . . § 52-576 (a)." The defendant did not specially plead the applicability of § 52-598a in his special defenses, although he did raise this statute in his posttrial brief to the fact finder, attempting to change his original position.

[11] "In bi-partite conveyances an acceptance is shown by the grantees' signature to it. In deeds poll his acceptance will ordinarily be presumed, if he has knowledge of the deed and expresses no dissent." *Greene* v. *A. & W. Sprague Mfg. Co.*, 52 Conn. 330, 372 (1885). According to Black's Law Dictionary (7th Ed. 1999), "deed poll" is defined as: "A deed made by and binding on only one party, or on two or more parties having similar interests."

[12] According to Black's Law Dictionary (7th Ed. 1999), "assumpsit" is defined as: "An express or implied promise, not under seal, by which one person undertakes to do some act or pay something to another . . . . A common-law action for breach of such a promise or for breach of a contract." "[I]t is elementary law that where a sum certain is due on a simple contract, indebitatus assumpsit will lie to recover it." *Packer* v. *Benton*, 35 Conn. 343, 348 (1868). Furthermore, "[a]n action on an 'implied contract' still includes actions which at common law would have taken the form of assumpsit upon such a contract." *Anderson* v. *Bridgeport*, 134 Conn. 260, 266, 56 A.2d 650 (1947).

[13] Because we conclude that the defendant was bound by the agreement to pay the taxes by his acceptance of the deed of conveyance, we need not address the other arguments regarding the statute of frauds.

[14] Although not cited in his appellate brief, during oral argument, the defendant argued that *Hartford Electric Light Co.* v. *Wethersfield*, 165 Conn. 211, 332 A.2d 83 (1973), concluded, as a matter of law, that easements could not be taxed. We disagree with the defendant's reading of this case. In *Hartford Electric Light Co.*, our Supreme Court held that public utility easements are not taxable *separately* to the public utility, but generally are taxable to the record owner of the freehold estate. Id., 219.

[15] Any claim that the plaintiff has some responsibility for the taxes on the land covered by the easement because she reserved the right to use the easement in the future is rejected for the same reasons.